STATE of Missouri, Plaintiff–
Respondent,

v.

Dennis GOTT, Defendant–Appellant.

No. 27060.

Missouri Court of Appeals,
Southern District,
Division Two.

May 22, 2006.

Rosalynn Koch, Columbia, MO, for ap-
pellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. (Jeff) Bartholomew, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

Dennis Gott (Defendant) was charged with committing the class C felony of possessing methamphetamine, a controlled substance. *See* § 195.202.[1] Defendant was found guilty after a jury trial and sentenced to serve seven years in prison. On appeal, Defendant contends the trial court abused its discretion by admitting Exhibit 4. This exhibit is a laboratory report which identified methamphetamine residue in a small key bob recovered by police from the Defendant's pants' pocket when he was arrested. Defendant argues that Exhibit 4 should have been excluded because the State failed to prove that, when the key bob was tested at the crime lab, it was in the same condition as when it was seized from Defendant. Specifically, he argues that chain of custody was not established because the State presented no evidence to show what transpired between the time the key bob was delivered to the laboratory and the time it was actually tested. We affirm.

## I. Factual and Procedural Background

Defendant does not contest the sufficiency of the evidence to support his conviction. Viewed in the light most favorable to the verdict, the following is a summary of the evidence adduced at trial.

In September 2004, Deputy Dennis Fowler (Deputy Fowler) and Missouri Highway Patrol Sergeant Kevin Glazier (Sgt. Glazier) were members of the Southeast Missouri (SEMO) Drug Enforcement Task Force. On September 3rd, Deputy Fowler and Sgt. Glazier were conducting a surveillance operation at an apartment complex in Dexter. At approximately 4:00 p.m., Sgt. Glazier observed a pickup truck pull up and park on the south side of the complex. A woman came out of an apartment on the east side of the building and got inside the truck. After about a minute, she left and walked back around to the east side of the building. She returned about a minute later, accompanied by Defendant. Both got inside the truck. Sgt. Glazier then approached the truck, opened the passenger door and removed Defendant from the truck at gunpoint. Sgt. Glazier placed Defendant on the ground and removed personal items from his pants' pocket. These items included a small key bob, which Sgt. Glazier laid on the ground next to Defendant. By then, Deputy Fowler had arrived on the scene. Deputy Fowler picked up the key bob and observed that it was a container which could be used to carry narcotics. He opened it and saw powder inside.[2]

Deputy Fowler immediately locked the key bob in his truck. Later that afternoon, he took it back to his office in Dexter. Once there, he packaged the key bob by placing it in an evidence envelope and sealing the envelope with red tape marked "Missouri State Highway Patrol." Deputy

---

1. All references to statutes are to RSMo (2000), and all references to rules are to the Missouri Court Rules (2006).

2. At trial, the key bob was marked as Exhibit 3. Pursuant to Rules 81.12(e) and 81.16, Exhibit 3 has been deposited with this Court by the State. This key bob has a rather distinctive appearance. It is a white plastic cylinder approximately two inches long and one inch wide with a screw-top lid. The body of the container and the lid are separated by a thick black gasket made of plastic or rubber. The lid has a protrusion on top of it. There is a small, triangular piece of silver metal that goes through a hole in the lid to form a closed loop by which the key bob could be attached to a key chain.

Fowler transported the envelope to the Stoddard County Sheriff's Office and placed it in his locker. Deputy Fowler used a padlock to secure the locker, and he was the only person with a key to that lock. On September 16, 2004, Deputy Fowler delivered the envelope to the SEMO crime lab for analysis. At the crime lab, the evidence technician signed in the envelope and assigned it lab number 63749. The envelope was locked inside an evidence locker. The only persons with keys to that locker are the five SEMO crime lab employees.

On January 19, 2005, Chemist Amy Nix (Nix) opened the envelope and analyzed the powder residue inside the key bob. Nix's analysis determined that the powdery residue was methamphetamine, and she prepared a report containing her conclusions. After testing was completed, Nix returned the key bob to the evidence envelope. She resealed the envelope with white lab tape. On that tape, Nix placed her initials, the date of testing and the assigned laboratory number. Nix then returned the sealed envelope to the lab's evidence locker to await pickup. On February 9, 2005, Deputy Fowler picked up the envelope and locked it in his locker, where it was kept until he removed it and brought it to court.

At trial, Sgt. Glazier, Deputy Fowler and Nix all testified regarding the chain of custody of the key bob. The key bob and the evidence envelope in which it was kept were constructively admitted in evidence as Exhibits 3 and 7.[3] Deputy Fowler and Nix both recognized Exhibit 7 as the envelope in which the key bob had been kept. The only change in Exhibit 7 that they observed was a new opening, created in court, that was used to remove the key bob from the envelope. Deputy Fowler and Nix each recognized the red tape and white tape which they respectively used to seal the envelope. Both tape seals were undisturbed at the time of trial. Deputy Fowler, Sgt. Glazier and Nix all testified that the key bob was in substantially the same condition as when they last saw it. Sgt. Glazier remembered seeing that particular item when he emptied out Defendant's pocket at the scene of his arrest.

Over Defendant's objections, the trial court admitted Exhibit 4, which was Nix's lab report. This report identified the powdery residue inside the key bob as methamphetamine. Defendant presented no evidence, and the jury found him guilty of possession of a controlled substance. After entry of judgment, this appeal followed.

## II. Standard of Review

■ The determination of whether a sufficient chain of custody has been established for admission of an exhibit is a matter within the sound discretion of the trial court. *State v. Link*, 25 S.W.3d 136, 146 (Mo. banc 2000). A trial court will be found to have abused its discretion only when a ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a

---

**3.** It does not appear from the transcript that Exhibits 3 and 7 were formally admitted in evidence. We note, however, that these two exhibits were marked for identification, displayed to the jury and extensively discussed during the testimony of Deputy Fowler, Sgt. Glazier and Nix. Finally, with the consent of attorneys for the State and Defendant, both exhibits were sent to the jury room for examination during deliberations. We therefore conclude that Exhibits 3 and 7 were constructively admitted in evidence. *See Clark v. FAG Bearings Corp.*, 134 S.W.3d 730, 736–37 (Mo. App.2004); *Main Street Feeds, Inc. v. Hall*, 975 S.W.2d 227, 230 n. 3 (Mo.App.1998); *Weule v. Cigna Property and Cas. Companies*, 877 S.W.2d 202, 204 (Mo.App.1994).

lack of careful consideration[.]" *State v. Brown*, 939 S.W.2d 882, 883 (Mo. banc 1997); *State v. Mathews*, 33 S.W.3d 658, 660 (Mo.App.2000).

Missouri law requires the State to provide a "reasonable assurance" that the exhibit sought to be introduced is received from the defendant and is in like condition at the time of introduction as when received. *State v. Sammons*, 93 S.W.3d 808, 810 (Mo.App.2002). "However, it does not require proof of hand-to-hand custody, a showing that the exhibit was continually watched, or proof of the exclusion of every possibility that the evidence has been disturbed." *Id.; State v. Anthony*, 857 S.W.2d 861, 865 (Mo.App. 1993). The trial court may assume, absent a showing of bad faith or ill will, that the officials charged with custody of the evidence properly discharged their duties and did not tamper with the evidence. *Link*, 25 S.W.3d at 146. "The trial court is in the best position to evaluate whether an exhibit has been improperly tampered with or contaminated." *State v. Smith*, 979 S.W.2d 215, 221 (Mo.App.1998).

### III. Discussion and Decision

In Defendant's sole point on appeal, he contends the trial court abused its discretion in admitting Exhibit 4 because the State failed to prove the item tested by Nix, the key bob, was in the same condition as when it was seized from Defendant. Specifically, he argues that the State failed to present evidence establishing what happened to the key bob between the time it was delivered to the crime lab (9/16/04) and it was tested (1/19/05). We disagree.

Nix testified that during this four-month period: (1) the key bob was kept in a sealed evidence envelope; (2) this envelope was locked in an evidence locker in the crime lab; and (3) only five crime lab employees could open the evidence locker.[4] The State does not have to prove the key bob was "continually watched" during that period. *State v. Sammons*, 93 S.W.3d 808, 810 (Mo.App.2002); *State v. Anthony*, 857 S.W.2d 861, 865 (Mo.App.1993). Nix's detailed testimony provided the trial court with a reasonable assurance the key bob was in like condition when tested as when it was received and had not been tampered with or contaminated. "We are confirmed in that view by the absence of evidence indicating bad faith or ill will on the part of the persons responsible for handling and testing this evidence." *State v. Smith*, 979 S.W.2d 215, 221 (Mo.App.1998) (holding chain of custody sufficiently established between delivery and pickup from crime lab). "The court may assume, in the absence of evidence to the contrary, that the officials charged with custody of the evidence properly discharged their duties and did not tamper with the evidence." *Id.* at 222; *see State v. Link*, 25 S.W.3d 136, 146 (Mo. banc 2000).

Defendant's reliance on *State v. Bode*, 125 S.W.3d 924 (Mo.App.2004) is misplaced. Here, the chain-of-custody challenge is limited to an attack on the integrity of the chain while the key bob was at the crime lab. *Bode*, on the other hand, attacked the integrity of the chain of custody between the time of the item's seizure and its delivery to the crime lab. *Id.* at 929–30. In *Bode*, "[n]one of the officers testified about what happened to the items after they were seized." *Id.* at 930. That is not true here. Sgt. Glazier and Deputy Fowler testified at length as to what hap-

---

4. Nix also explained the delay in completing the tests. The SEMO crime lab receives "probably forty cases a week, so with only the limited amount of people that we have, it takes a little bit of time from the time [law enforcement agencies] submit the cases for us to get them back to them."

pened to the key bob after it was seized and prior to its delivery to the crime lab. Moreover, Deputy Fowler also provided testimony concerning the continued integrity of the chain of custody by accounting for the whereabouts of the key bob from the time he retrieved that evidence from the crime lab until he brought it to court on the day of trial.

 Furthermore, all three of the State's witnesses who testified about chain of custody were able to visually identify Exhibit 3. Sgt. Glazier, Deputy Fowler and Nix each testified that the key bob was in substantially the same condition as when they last saw it. In Sgt. Glazier's case, that was when he removed it from Defendant's pocket. "Chain of custody of an exhibit is irrelevant where the exhibit is positively identified at trial." *State v. Gustin,* 826 S.W.2d 409, 417 (Mo.App. 1992); *Smith,* 979 S.W.2d at 222; *State v.*

*Sullivan,* 935 S.W.2d 747, 754 (Mo.App. 1996). Any possible weaknesses in an identification is a proper subject of cross-examination and may be considered by the jury in assessing the weight of the evidence. *Smith,* 979 S.W.2d at 222.

We conclude that the trial court did not abuse its discretion in admitting Exhibit 4, the crime lab report, into evidence. Accordingly, Defendant's point on appeal is denied, and the judgment of the trial court is affirmed.

SHRUM, P.J., and BARNEY, J., Concur.