Terry HARRIS and Charlotte Harris, Plaintiffs–Appellants,

v.

Curtis DIVINE and Debra Lynn Divine, Defendants– Respondents.

No. SD 28993.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 16, 2008.

Douglas R. Kennedy, Kennedy, Kennedy, Robbins & Yarbro, L.C., Poplar Bluff, MO, for Appellants.

Michael M. Pritchett, Poplar Bluff, MO, for Respondents.

GARY W. LYNCH, Chief Judge.

Terry and Charlotte Harris ("Plaintiffs") brought a four-count petition related to the location of the boundary line between their property and that of Curtis and Debra Divine ("Defendants"). Judgment was entered adverse to Plaintiffs, and they appeal. We affirm the judgment.

### Factual and Procedural Background

Plaintiffs and Defendants are adjoining property owners in Butler County. Plaintiffs are the record title owners of the following described premises (hereinafter, "the Harris Tract"):

All of that part of the Southwest Quarter of the Southeast Quarter of Section 5, Township 24 North, Range 6 East, described as follows: Beginning at a point 542 feet and 8 inches north of the Southwest corner thereof; running thence north along and with the west line a distance of 130 feet; thence east parallel with the south line a distance of 1110 feet to a point 210 feet west of the east line of said forty acre tract; thence south parallel with the east line a distance of 130 feet; thence west parallel with the south line a distance of 1110 feet to the place of beginning[.]

Defendants are the record title owners of the following described premises (hereinafter, "the Divine Tract"):

All of that part of the Southwest Quarter of the Southeast Quarter of Section 5, Township 24 North, Range 6 East, described as follows: Beginning at a point 468 feet and 4 inches North of the Southwest corner of said Southwest Quarter of the Southeast Quarter; thence, North along and with the West line a distance of 74 feet and 4 inches; thence, East parallel with the South line a distance of 1110 feet; thence, South parallel with the east line a distance of 74 feet and 4 inches; thence, West parallel with the south line a distance of 1110 feet to the place of beginning[.]

The Harris tract lies immediately north of and is contiguous to the Divine tract.

Plaintiffs acquired the Harris tract in 1996 from James and Wilma Stewart, whose predecessor in interest was William A. Divine, from whom the Stewarts acquired title in 1988. William had owned

the tract since 1954 and was a brother to Charles Divine, who in 1988 held title to the Divine Tract as part of a larger parcel south of the Harris Tract. Charles Divine had acquired title to his parcel in 1971 and was defendant Curtis Divine's father. Defendants acquired the Divine Tract from Charles in January 1992.

In March 2005, a controversy regarding the location of the boundary on the ground between the two tracts culminated when Defendants constructed a fence across what they claimed was their northern boundary. In dispute was a strip of land 4.3 feet wide on the west end and 10.5 feet wide on the east end, bounded on the north by the fence Defendants constructed and the south line of which Plaintiffs claimed was their southern boundary.

Plaintiffs filed suit, and their amended petition contained four counts: Count I sought to quiet title to the disputed strip; Count II sought a judgment for ejectment against Defendants; Count III sought a judgment under adverse possession; and Count IV sought the establishment of an implied easement. Defendants denied that they encroached upon Plaintiffs' property when they erected the fence in 2005 and counterclaimed, seeking to quiet title to the disputed area in their favor, contending that they and their predecessors in interest "have been in the actual, exclusive, notorious, and adverse possession of the said property continuously for more than [ten] years" prior to the filing of Plaintiffs' petition.

At trial, the parties relied on separate surveys, each of which located the boundary on the ground between the respective tracks in accordance with each parties' respective contentions. Plaintiffs relied upon the testimony and two surveys pre-

pared by Thomas J. Mathis III, an engineer and licensed land surveyor. In January 1992, Mathis first surveyed the Harris Tract, then owned by James and Wilma Stewart.[1] The Stewarts ordered this survey and soon thereafter began construction of a fence on the southern boundary of the Harris tract as determined by the survey.

Defendants relied upon the testimony of Lawrence Fisher of S.H. Smith and Company and his survey of the Divine Tract made and prepared in May 1996 ("Smith survey"). The Smith survey did not match the 1992 Mathis survey in that the boundary line between the two tracts on the west end in the Smith survey is 4.3 feet north of that indicated by Mathis, and the east end as shown on the Smith survey is 10.5 feet north of that indicated by Mathis. After this survey, defendant Curtis Divine removed the fence erected by the Stewarts, and the parties' dispute escalated to the point that the Stewarts filed suit. That action was dismissed by the Stewarts, however, after they sold the Harris tract to Plaintiffs.

In 1998, Plaintiffs called upon Mathis to re-survey the Harris Tract. The 1998 survey was admitted as Plaintiffs' Exhibit 12. Mathis testified that this survey was essentially the same as his 1992 survey, with one change and one addition. On the 1992 survey, according to Mathis' and Fisher's testimony, Mathis showed the distance from the quarter corner to the point of beginning of the Harris tract as being 542 feet 8 inches, while on his 1998 survey he changed that measurement to show a distance of "538.3 (542'8″ Record)[,]" meaning that the actual distance as measured on the ground was 538.3 feet, while the record

1. This survey was admitted in evidence as Plaintiffs' Exhibit 3, but it is not included in   the record before this Court.

title called for of a distance of 542 feet 8 inches. Mathis also testified that he added to his 1998 survey the location of the pins placed by surveyor Fisher in 1996 from the Smith survey of the Divine tract.

The difference in the location of the boundary line between the two tracts as determined by the Mathis surveys and the Smith survey is attributable to the different methods each surveyor used. Mathis described his procedure in surveying the Harris tract as:

> The property was described from the Southwest Corner of the Southeast Quarter so we recovered a pin that I had set there in 1984 and measured from there north the deed distance and in the vicinity of where the property was called out in the description we found some existing markers, which we felt were the intended property corners and we yielded to.

Whereas Fisher, in performing the Smith survey for the Divine tract, while starting at the same point as Mathis,[2] used the actual courses and distances from the legal description of the Divine tract.

The trial court found that the Mathis survey yielded "to various indications of possible past occupation and did not accurately reflect the location of a boundary line set forth in Plaintiffs' legal description or Defendants' legal description." Finding the issues for the Defendants, the trial court denied Plaintiffs any relief and decreed that "Defendants are vested with fee simple title in and to the [Divine tract] as established by [the Smith survey]." Plaintiffs timely appealed.

***Standard of Review***

"Appellate review in this non-jury case requires that the judgment be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Walton v. Gilton,* 175 S.W.3d 170, 171 (Mo.App.2005). "The trial court's judgment is presumed valid, the burden is on the appellant to demonstrate its incorrectness, and due regard is given to the trial court to judge the credibility of witnesses." *Id.* Upon review of a court-tried case, all evidence and inferences are viewed in a light most favorable to the judgment, and all contrary evidence and inferences are disregarded. *Hale v. Warren,* 236 S.W.3d 687, 691 (Mo.App.2007).

***Discussion***

Plaintiffs raise two points on appeal which we address in order.

*Point I—Smith Survey*

■ Point I challenges the trial court's reliance upon the Smith survey for two reasons: (1) it "was never offered or received into evidence"; and (2) it "incorrectly established the boundary line ... in failing to yield the course and distances of the legal description to established artificial monuments as required by surveying methods and standards in this state[.]" This court disagrees with both contentions.

The Smith survey was marked as "Plaintiffs' Exhibit 1." During his direct examination, surveyor Fisher testified that he prepared Plaintiffs' Exhibit 1 from the legal description of the Divine tract contained in the deed from Charles Divine to Curtis Divine, which deed he identified as

---

**2.** The legal descriptions of both the Harris track and the Divine track commence at the Southwest corner of the Southwest Quarter of the Southeast Quarter of Section five (5), Twenty-four (24) North, Six (6) East. This corner was restored by Surveyor Mathis in 1984. The 1992 and 1998 Mathis surveys, as well as the Smith survey, commenced from this restored quarter corner.

being Defendants' Exhibit E. Defendants' trial counsel, without objection, then directed the trial court's attention to the fact that this deed, having been recorded in Book 734 at Page 368, had already been admitted into evidence through pages 72 and 73 of Defendants' Exhibit A. Apparently, this exhibit was the abstract to the Divine tract, and pages 72 and 73 showed the deed recorded in Book 734 at Page 368. Surveyor Fisher then testified that Plaintiffs' Exhibit 1 accurately reflected "the courses and distances and the legal description of the deed marked as Defendants' Exhibit E." At this point, the following colloquy occurred:

> [Defendants' trial counsel]: Judge, at this time I would like to offer into evidence Defendants' Exhibit E[sic] and I would offer it as a joint exhibit.
>
> [Plaintiffs' trial counsel]: Your Honor I object to it. I don't think that it's a proper *survey* under the standards of a registered land surveyor as set forth in the Code of State Regulations. I think that the deed itself calls for particular distances from a reestablished point, but it does not call for any type of specific direction, except due north calls, due west call, that sort of thing and I think that what he has done is interpreted the meets [sic] and bounds from the legal description from the deed and interpreted those to follow along with certain descriptions of direction and for that reason I object to the entry of this.
>
> THE COURT: Okay. Your objection will be overruled. It will be admitted. You can cross-examine him on that.

(Emphasis added).

In its ruling the trial court admitted into evidence either Defendant's Exhibit E—the deed—as offered by Defendants' counsel or Plaintiffs' Exhibit 1—the Smith survey—as objected to by Plaintiffs' counsel. Put another way, either Defendants' trial counsel erroneously referred to the Smith survey as Defendants' Exhibit E instead of Plaintiffs' Exhibit 1 when he offered it into evidence or Plaintiffs' trial counsel erroneously referred to Defendants' Exhibit E as a "survey" when he objected to it. During oral argument before this court, Plaintiffs' counsel, who was also Plaintiffs' trial counsel, very candidly and forthrightly cleared up the confusion when he was asked: "[Y]ou understood and knew that what [Defendants' trial counsel] was offering into evidence was Plaintiffs' Exhibit 1, the survey, is that correct?" He responded: "Absolutely, absolutely. But I'm saying, technically it was not offered into evidence; it was not identified and received into evidence accordingly." Clearly, Plaintiffs' Exhibit 1 was offered and received into evidence even though it was erroneously referred to by Defendants' trial counsel as Defendants' Exhibit E.

▮ Nevertheless, even if Plaintiffs' Exhibit 1 was not "technically" offered and received into evidence, as Plaintiffs now argue, it was constructively admitted. Exhibits that are marked, identified, testified to regarding their contents, and used in evidence are in evidence as if they had been formally introduced. *See State v. Gott*, 191 S.W.3d 113, 115 n. 3 (Mo.App. 2006); *Clark v. FAG Bearings Corp.*, 134 S.W.3d 730, 737 (Mo.App.2004); *Main Street Feeds, Inc. v. Hall*, 975 S.W.2d 227, 230 n. 3 (Mo.App.1998); *Weule v. Cigna Property and Cas. Companies*, 877 S.W.2d 202, 203–204 (Mo.App.1994). Here, the Smith survey was marked as Plaintiffs' Exhibit 1, identified and testified about by surveyor Fisher, objected to by Plaintiffs' trial counsel, and used by Plaintiffs' trial counsel in cross-examination of surveyor Fisher. As such, it was at the very least constructively received into evidence. *Id.*

▮ We now turn to Plaintiffs' second contention wherein Plaintiffs argue that

the trial court misapplied the law in relying upon the Smith survey because it "incorrectly established the boundary line ... in failing to yield the course and distances of the legal description to established artificial monuments as required by surveying methods and standards in this state."

■ Specifically, Plaintiffs contend that the Smith survey fails to comply with the surveying method and standard, that boundaries that are "actually laid out, located, and staked out upon the surface of the ground by the original owners of the land and makers of the plat" should prevail over a plat that "erroneously attempted to follow the calls for monuments, courses, and distances." [3] *Ollison v. Village of Climax Springs,* 916 S.W.2d 198, 207 (Mo. banc 1996) (citing *Wright v. City of Joplin,* 275 Mo. 212, 204 S.W. 910, 913 (1918)). Plaintiffs argue that the trial court's reliance upon the Smith survey, which platted the actual courses and distances of the record title, to the exclusion of the Mathis surveys, which yielded to markers found on the ground, was a misapplication of this standard. The resolution of this legal issue and the application of this surveying standard hinges upon the trial court's resolution of the factual issue as to whether any of the markers as found by the surveyors were located upon the boundary "actually laid out, located, and staked out upon the surface of the ground by the original owners of the land and makers of the plat[,]" or in this case, the makers of the deed descriptions for the tracts.

In 1984, Mathis restored the point of commencement, the southwest corner of the southeast quarter, also referred to as the "quarter corner." At that time, according to Mathis, some of the neighbors told Mathis "that another pin in the vicinity had been set by a property owner and he had also set a lot of the pins up and down the roads."

In yielding to the pins he found, Mathis testified he looked "not only at occupation," but also their "position in reference to any other corners" and "the relationship between found pins to see if they match the deed call." When asked to explain what he meant by the relationship between found pins, Mathis stated, "[I]n the description it's going to call out some footage.... I think the deed description was one hundred thirty feet on the north side. And the two pins we found were within about a foot of that. We *felt* like they were the intended original markers." (Emphasis added). Mathis also testified, "[F]or the frontage of the property along the road they are about a foot different than the legal description called for and from the southwest corner south to the point of commencement, which is a quarter section corner, my recollection was about four feet difference." Mathis conceded that his surveys did "not exactly" match the distances indicated on the legal description, however he believed the differences were "within what I felt was acceptable tolerances." Mathis also testified that he took into consideration occupation, as indicated by "fence lines, mowing lines, buildings, driveways, that kind of stuff." He also considered how long fence lines had been there.

3. While Plaintiffs in the argument portion of their brief on this point cite in passing sections 60.150 and 60.510(7), RSMo 2000, and 10 CSR 30–2.020(6)(7) and 10 CSR 30–2.030(1)(2), they fail to offer any explanation or argument as to how they contend the Smith survey does not comply with any specific requirement of either the cited statutes or the cited regulations. "An argument must explain why, in the context of the case, the law supports the claim of reversible error. It should advise the appellate court how principles of law and the facts of the case interact." *In re Marriage of Fritz,* 243 S.W.3d 484, 487 (Mo.App.2007). A contention which is not so argued is considered abandoned. *Id.*

Fisher testified that Defendants supplied him with a legal description from their deed, a copy of which Fisher had also obtained from the county courthouse. Fisher testified that he utilized the legal description contained in this deed to prepare the Smith survey for Defendants. He further stated that the drawing as shown on Plaintiffs' Exhibit 1, the Smith survey, accurately reflected the courses and distances and the legal description from Defendants' deed.

Fisher testified that he had notified Mathis of the discrepancies between the plat of his survey compared to that of Mathis' 1992 survey and told Mathis that the measurement going to Mathis' point of beginning was in error. He believed the measurement was off approximately four feet. Mathis' point of beginning was 4.33 feet south of Defendants' northwest corner. Fisher did not believe the square-headed peg at that point was an artificial monument because he found no proof that it was set by a surveyor, and given that "it was 4.33 feet off," he believed that was an indication that it was not set by a surveyor, as 4.33 feet would be "pretty far off for a surveyor." Fisher stated that he found a lot of half-inch diameter rebar at various places and found a three-eighths-inch diameter rebar pin at the northeast corner of Defendants' property, which he believed to be an artificial monument. This monument "was roughly in the fence." Fisher also observed "an inch and a half by inch and a half square bar back there about 3.29 feet kind of southeast[,]" and "a tie post about nine foot further east[,]" both of which were relatively in the fence. In the southwest corner, Fisher found a fence corner post but nothing else.

Fisher testified that he believed Mathis used the artificial monuments that Fisher found, "but he shows a dimension on his plat that coincided with the description and it was four foot off." When shown Plaintiffs' Exhibit 12, the 1998 survey by Mathis, and when asked whether the survey accurately reflected the distances to the artificial monuments, Fisher stated: "That is much closer. It's 538.3 on here instead of five hundred forty-two and eight inches. On the plat that he gave me he just showed it at five hundred forty-two and eight inches. He didn't say it was recorded on the plat." Fisher agreed that Mathis drew the survey on Plaintiffs' Exhibit 12 "matching the survey with the artificial monument[s] that were present out there that both [he] and Mr. Mathis found."

During cross-examination, Plaintiffs asked what gave Fisher his direction in setting the lines, to which Fisher responded, the "four corners of the forty acres." Where the legal description directed "thence north along the west line" from the southwest corner, Fisher measured "north between the two corners of the forty acre line," in order to stay parallel to the forty-acre line. Fisher explained that he "tied into the southwest corner, which is a documented corner; the northwest corner, which is a documented corner; the southeast corner, which is a documented corner and we also tied in one here that we didn't show it on because it was immaterial because we had to parallel this line and this line." Fisher testified that this procedure was standard practice in the state of Missouri.

The trial court may accept or reject all, part, or none of an expert's testimony. *Hale*, 236 S.W.3d at 694. "Much of a surveyor's testimony is actually in the nature of expert testimony, and to some extent his [or her] conclusions are permissible, when supported by the facts." *Massachusetts Gen. Life Ins. Co. v. Sellers*, 835 S.W.2d 475, 479 (Mo.App.1992). Fisher testified that in conducting the sur-

vey ordered by Defendants, he utilized the legal description contained on Defendants' deed, and his plat accurately reflected the courses and distances specified on the deed. Fisher also stated that he found a lot of half-inch-diameter rebar set at various places but did not believe that certain markers were actually artificial monuments, given the discrepancy between the location of the object and the deed calls and the lack of any proof that the marker was set by a surveyor. The trial court was free to believe Fisher's testimony and disbelieve Mathis' testimony that he "felt" the markers he found on the ground "were the intended property corners."

In addition, the trial court had before it conflicting testimony from former and current property owners. James Stewart testified that his predecessor in interest, William Divine, pointed out the corners of the parcel north of the disputed boundary and indicated that the southwest corner was marked with a 4–inch by 4–inch solid piece of iron, and at the southeast corner, a length of rebar or a larger corner post was set. Approximately halfway along the length of the south boundary was an old axle. Stewart testified that he built his fence along Mathis' survey line, however, he observed that the survey line at the southeast corner of his parcel was approximately ten feet north of an old fence line.

Charles Divine testified that he had a good idea of the location of the boundary, in that his grandfather had initially set half-inch rebar pins to mark the boundary, and the pins placed by Smith in the northwest corner were "real close" to where he believed the boundary to be. Curtis Divine also testified that the northwest corner pin set by Fisher "looked to be pretty close to" the pin his father had shown to him. However, after Stewart ordered a survey in 1992, Curtis inspected the location of the pin at the northwest corner of the Divine tract and observed that the pin set by Mathis was approximately four feet south of the pin his father had pointed out.

■ The burden of presenting credible evidence to establish the location of the boundary line is upon the party asserting a specific location of the boundary. *Ollison v. Village of Climax Springs,* 916 S.W.2d 198, 203 (Mo. banc 1996). Viewing the evidence in the light most favorable to the result reached by the trial court, as we must, and giving the trial court deference in making credibility determinations in resolving conflicting testimony, as we must, we find that the Plaintiffs failed to carry their burden of proving that the markers on the ground that Mathis relied upon in establishing the southern boundary of the Harris tract were located upon the boundary "actually laid out, located, and staked out upon the surface of the ground by the original owners of the land and makers of the plat[,]" or in this case, the makers of the deed descriptions for the tracts. As such, we find no misapplication of the law by the trial court in relying upon the Smith survey as contended by Plaintiffs in their first point. Plaintiffs' first point is denied.

*Point II—Boundary by Acquiescence*

■ In their second point, Plaintiffs claim that the trial court erred in not establishing the boundary pursuant to evidence of acquiescence between the parties in the boundary determined by the Mathis survey.

■ "A boundary line 'may not be established by acquiescence unless there is some contention between the landowners over the location of the line as a result of which a boundary is established in which the landowners subsequently acquiesce.'" *Shoemaker v. Houchen,* 994 S.W.2d 40, 46 (Mo.App.1999) (quoting *Aley v. Hacienda Farms, Inc.,* 584 S.W.2d 126, 128 (Mo.App.

1979)). "Direct evidence is not required to show an agreement fixing a boundary line, such an agreement 'may be inferred from the acts, conduct, and ... from the long acquiescence of the parties.'" *Shoemaker*, 994 S.W.2d at 45 (quoting *Tillman v. Hutcherson*, 348 Mo. 473, 154 S.W.2d 104, 107 (1941)).

Plaintiffs allege that their motion to amend the pleadings to conform to the evidence at the end of the trial placed the issue of boundary by acquiescence before the trial court. We need not decide, however, whether the motion was sufficient to amend Plaintiffs' pleadings, as the evidence before the trial court, when viewed in the light most favorable to the result reached by the trial court, did not establish that the parties ever acquiesced to a common boundary line.

 James Stewart testified that Curtis Divine never objected to the location of the fence and further stated that there was no disagreement with Curtis as to the location of the boundary on the west end of their properties, as Curtis assisted him in setting the corner fence post at the marker placed by Mathis. Stewart further testified Curtis granted permission to clear trees at the southeast corner and remove an old oak tree in order to build his fence. The trial court was free to disbelieve this testimony. *Hale*, 236 S.W.3d at 694. However, even assuming without deciding that the trial court found Stewart's testimony credible, failure to dispute the location of a fence is not necessarily acquiescence in a boundary. *Conduff v. Stone*, 968 S.W.2d 200, 204–05 (Mo.App.1998).

William Divine, Stewart's predecessor in title, told Stewart when he purchased the property that he and Curtis had "agreed to disagree" as to the location of the boundary line. At the time Plaintiffs purchased the property, Terry Harris was made aware of the boundary dispute and con-

ceded that Defendants did not accept the boundary marked by Mathis as the true boundary.

Coupled with the testimony from Curtis Divine regarding his specific disagreement with the location of the boundary, the evidence before the trial court, viewed in a light favorable to the judgment, does not support a claim that the parties acquiesced in the location of the boundary line separating their respective properties. Plaintiffs' second point is denied.

### Decision

The trial court's judgment is affirmed.

BURRELL, P.J., and PARRISH, J., concur.