Anna M. SKOVIRA, Petitioner–
Respondent,

v.

Donnie TALLEY, Respondent–
Appellant.

No. SD 31629.

Missouri Court of Appeals,
Southern District,
Division Two.

June 15, 2012.

Appellant Acting pro se.

Respondent Acting pro se.

JEFFREY W. BATES, J.

Donnie Talley (Talley) appeals from a judgment granting Anna Skovira (Skovira) a full order of protection pursuant to the Adult Abuse Act (the Act) after a bench trial. *See* §§ 455.010–.090.[1] The trial court found that Talley was stalking Skovira and granted a full order of protection. On appeal, Talley contends there was insufficient evidence to support the court's finding. We disagree and affirm.[2]

## I. Standard of Review

■ "Because there is real harm that can result in abusing the Adult Abuse Act and its provisions, including the stigma that may attach to a respondent who is ultimately labeled a 'stalker,' trial courts must exercise great care to ensure that sufficient evidence exists to support all elements of the statute before entering a full order of protection." *McGrath v. Bowen*, 192 S.W.3d 515, 517 (Mo.App. 2006); *see Overstreet v. Kixmiller*, 120 S.W.3d 257, 259 (Mo.App.2003); *Glover v. Michaud*, 222 S.W.3d 347, 351–52 (Mo. App.2007). The Act is not, nor was it intended to be, "a solution for minor arguments between adults." *Binggeli v. Hammond*, 300 S.W.3d 621, 624 (Mo.App.2010).

Nevertheless, we presume the trial court's judgment is correct, and Talley bears the burden of proving it erroneous. *Surrey Condominium Ass'n, Inc. v. Webb*, 163 S.W.3d 531, 535 (Mo.App.2005). Appellate review in this court-tried case is governed by Rule 84.13(d). *Dennis v. Henley*, 314 S.W.3d 786, 787 (Mo.App.2010). "The trial court's judgment must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.*; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ On appeal, this Court views all facts and inferences in a light most favorable to the judgment. *C.B. v. J.B.*, 356 S.W.3d 790, 793 (Mo.App.2011); *Vinson v.*

---

1. All references to statutes are to RSMo Cum. Supp. (2010) unless otherwise indicated. All references to rules are to Missouri Court Rules (2011).

2. Skovira did not submit a brief. Talley was self-represented on appeal. Although he requested oral argument, he did not appear at the docket call. Consequently, the case was submitted on Talley's brief alone.

*Adams,* 188 S.W.3d 461, 464 (Mo.App. 2006). "The trial judge is in the best position to gauge the credibility of the witnesses and to determine the existence of any reasonable apprehension of abuse that a petitioner may harbor; conversely, the judge can determine whether a given respondent appears capable of the feared abuse." *Parkhurst v. Parkhurst,* 793 S.W.2d 634, 636 (Mo.App.1990); *C.B.,* 356 S.W.3d at 792–93. We therefore defer to the trial court's credibility determinations. *C.B.,* 356 S.W.3d at 793; *Vinson,* 188 S.W.3d at 464.

## II. Factual and Procedural Background

In July 2011, Skovira filed a verified petition requesting an order of protection.[3] The petition alleged, *inter alia,* that she was being stalked by Talley. An *ex parte* order of protection was issued that same day. Thereafter, Talley filed a motion to dismiss and an alternative motion to make the allegations of the petition more definite and certain. The trial court denied the motion to dismiss, but it granted the motion for a more definite statement and allowed Skovira to amend her petition to add the dates, places and details that she could remember. Skovira then filed an amended verified petition that included an attached two-and-a-half page narrative containing the dates, times and places that Talley's actions against Skovira had occurred. The hearing on the full order of protection was held in September 2011. Viewed most favorably to the judgment, the testimony and evidence presented at trial reveal the following facts.

Skovira and Talley are both soldiers who worked in the same warehouse at Fort Leonard Wood. Skovira arrived on base in early July 2010 and lived in the barracks in single-soldier housing. Talley was a much older married man in his 50's, who lived off post. When Skovira first arrived, Talley began calling and texting Skovira after work and on weekends to ask her out. When she would say no, he would "constantly beg." On July 16, 2010, Skovira's platoon sergeant held a counseling session with Talley to tell him to stop calling and texting. Instead of ceasing that conduct, Talley not only continued to call and text, but began driving by Skovira's barracks. On July 26, 2010, the platoon sergeant again "issued a negative counseling to Talley ... for driving past [Skovira's] barracks up and down the street and the excessive calling and texting."[4] At work, Talley would try to talk to Skovira whenever possible. He would stare at Skovira, eye her up and down, lick his lips, groan and say sexual comments like "mmmm" and "okay Sko I see you."

On September 8, 2010, Talley texted Skovira messages telling her that he was crazy about her and decided to file his divorce paperwork so that they could be together. Skovira forwarded the messages to her platoon sergeant, who "issued him another counseling," this time "a negative counseling on disobeying a direct order" stating that Talley's conduct was "inappropriate" and "unbecoming of a soldier." The next day, Skovira submitted a written statement stating she had been harassed by Talley since she arrived in

---

3. A "verified" petition means one that is "supported by oath or affirmation." *Crawford v. State,* 834 S.W.2d 749, 752 (Mo. banc 1992). In Skovira's petition, she signed her name after attesting: "I swear/affirm under penalty of perjury that these facts are true according to my best knowledge and belief."

4. At this time, Skovira became aware that, earlier that year before she arrived, "an article 15 was issued for failure to follow [Talley's] squad leader's direct orders which was to stop harassing a [different] female in the warehouse[.]"

early July. On September 23, 2010, the company commander issued a no-contact order, restraining Talley from initiating any contact or communication with Skovira and requiring that he stay at least 100 feet away from her.

During the holidays, Skovira caught Talley snapping photos of her, which made her feel very uncomfortable. On April 18, 2011, Skovira received a text from Talley saying "I will be able to give you a date on the 5th of May." When asked to explain, Talley said "we are getting married remember?" In no uncertain terms, Skovira clarified that they were definitely not getting married and to leave her alone. Later in April, Skovira's roommate came home with a wedding ring Talley had given the roommate to give to Skovira, explaining that Skovira had asked for it. On May 25, 2011, Talley was issued a second no-contact order, again stating that he was not to have any contact with Skovira and to stay at least 100 feet away from her.

In early June, after finalizing his divorce, Talley moved into the barracks right next door to Skovira in direct violation of the no-contact orders. She reported Talley to her platoon sergeant, who made sure housing was aware of the no-contact orders to prevent Talley from moving into the next-door barracks. On June 31, 2011, Talley showed up at the house of Skovira's friend. The friend had no idea how Talley knew how to get to his house, except to follow the friend there. Talley told the friend that Talley and Skovira were getting married in November, and asked the friend to call Skovira from the friend's phone to finalize the marriage. Talley explained that he could not call or text her because he was not permitted to do so. Although the friend called, Skovira did not answer, and the friend thought she was probably sleeping. Talley didn't think so and explained that Skovira was not

home "because [he'd] been driving by her house." When Skovira discovered the missed call, she called her friend. After learning what happened, Skovira reported the incident to her commander.

On July 5, 2011, a third no-contact order was issued, which also put a "watch" on Talley. He was to be escorted wherever he went, his car was taken from him and he was to "sleep up at the battalion where he could be watched by staff duty all night long." Because the military protection orders had been broken in the past, however, and Talley's conduct was escalating, Skovira decided to seek a civil protection order.

That same day, Skovira filed her original petition for an order of protection, alleging that Talley stalked her, harassed her and followed her from place to place. In her petition, Skovira briefly summarized Talley's actions described above and stated that "Talley has been continuous with his actions pursuing me for 1 year now. After some of the things he's done this man is obviously deranged! I honestly don't know what he will do next and me living by myself with no family here for protection, I am scared of him coming around." Along with her petition, she also filed a police report. The *ex parte* order of protection was issued later that day.

Following the grant of Talley's motion for a more definite statement, Skovira filed her amended petition. Therein, Skovira stated that "I do not feel safe anymore knowing I am in the area of this individual. He's just progressing with everything he's done and I'm scared to even think about what's next." Skovira then again summarized Talley's acts against her, describing his actions as "sexual stares, gestures, driving up and down my street, phone calls, texts, third party messages, wedding dates, wedding ring, breaking military protection orders." In support of these alle-

gations, Skovira attached the narrative detailing Talley's actions.

At trial, the judge initially stated that he had read Skovira's petition and asked her to "tell me in your own words what Mr. Talley has done that led to you filing this order of protection, why you're worried about him, apprehensive and so on." Skovira then testified as to Talley's advances and unrelenting conduct in pursuing her over the past year. She referred to Talley's calls, texts, driving by her barracks, setting wedding dates, giving her a wedding ring and attempting to move in next door. She further reported Talley's behavior had not stopped. She testified that she only recently learned that about a month before trial, Talley again tried to move in next door to her, but this time, housing was aware of the no-contact orders and thwarted Talley's efforts to move. During cross-examination, Talley asked the court to review the allegations in Skovira's verified petition. Talley then questioned Skovira about some of the allegations in those documents. The trial court expressly found Skovira credible and that Talley had been stalking her. The court granted a full order of protection for one year. This appeal followed.[5]

### III. Discussion and Decision

"Any adult who has been subject to abuse by a present or former adult family or household member, or who has been the victim of stalking, may seek relief ... by filing a verified petition alleging such abuse or stalking by the respondent." § 455.020 RSMo (2000). Since Skovira and Talley do not fall within any of the various definitions of what constitutes a family or household member, Skovira could only seek an order of protection based upon an allegation of stalking, which she alleged in her petition. *See id.; Towell v. Steger,* 154 S.W.3d 471, 473 (Mo. App.2005). Skovira had to prove this allegation by a preponderance of the evidence. *See* § 455.040.1; *Clark v. Wuebbeling,* 217 S.W.3d 352, 354 (Mo.App.2007); *Vinson v. Adams,* 188 S.W.3d 461, 464–65 (Mo.App. 2006).

"Stalking" is defined to occur "when an adult purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct." § 455.010(10). Thus, in order for Skovira to prove her entitlement to a full order of protection, she had to present substantial evidence that Talley: (1) purposely and repeatedly; (2) engaged in an unwanted course of conduct; (3) that caused alarm to Skovira; (4) when it was reasonable in her situation to have been alarmed by the conduct. § 455.010(10). As defined by this subsection of the Act, a "course of conduct" must be composed of repeated acts over a period of time that serve no legitimate purpose. § 455.010(10)(b). "Repeated" is further defined to require two or more incidents demonstrating a continuity of purpose. § 455.010(10)(c). "Alarm" requires proof that the petitioner

---

5. On appeal, Talley seeks not only reversal of the judgment, but also requests this Court to: (1) remove all record of the protection order from law enforcement and military databases; (2) order reversal of the "Installation Bar at Fort Leonard Wood"; (3) order the upgrade of Talley's military discharge; (4) order the army to pay Talley a separation payment that he would have received if given a medical discharge; (5) order Skovira to pay damages of $60,000 due to the loss of his job, automobile, damage to his credit and "the two articles 15's" he received because of this action; and (6) order the reinstatement of Talley to his former position, and if reinstatement is not possible, then award Talley the additional sum of $75,000. Our role is limited to a review of the one alleged error presented by Talley's brief. All other relief requested by Talley is denied.

was placed in "fear of danger of physical harm." § 455.010(10)(a). Proof of alarm involves both a subjective and an objective component. *See Glover v. Michaud,* 222 S.W.3d 347, 352 (Mo.App.2007). Skovira had to present substantial evidence that: (1) Talley's conduct caused Skovira to subjectively fear physical harm; and (2) a reasonable person under the same circumstances would have feared physical harm. *Id.*; *Schwalm v. Schwalm,* 217 S.W.3d 335, 337 (Mo.App.2007); § 455.010(10).

■ In Talley's point, he contends that the trial court erred in granting the full order of protection on the basis of stalking because Skovira failed to meet her burden of proof showing that Talley engaged in a course of conduct that reasonably caused alarm to Skovira. Specifically, Talley argues that Skovira "failed to testify that she was scared of [Talley] and proffered no evidence of any physical altercations or other events that would suggest that [Talley caused] her fear of danger of physical harm." We disagree.

Talley relies on *Schwalm,* a case in which the eastern district of this Court reversed a husband's full order of protection against his wife based on stalking because the husband did not allege, much less prove, fear of danger of physical harm at the hands of wife. *Schwalm,* 217

S.W.3d at 337. There, the evidence showed that wife: (1) knocked on husband's door multiple times but left peaceably when husband refused to answer; (2) blocked husband's vehicle in a parking lot but moved when requested; and (3) followed him to work on occasion and approached him at gas station. *Id.* At his attorney's prompting, husband simply affirmed that wife's conduct caused him "alarm." *Id.* The *Schwalm* court held that "[w]hile the statutory definition of stalking requires alarm, a plaintiff is required to do more than simply assert a bare answer of 'yes' when asked if he was alarmed. A plaintiff must show that a defendant's conduct caused him fear of danger of physical harm as stated in the statutory definition of alarm." *Id.*

Here, Talley's reliance on *Schwalm* is misplaced because Skovira proved that Talley's conduct caused her fear of danger of physical harm.[6] In Skovira's original petition, she referred to Talley's "continuous" actions during the past year and described him as "obviously deranged[.]" She also said: "I honestly don't know what he will do next and me living by myself with no family here for protection, I am scared of him coming around." In the amended petition, she stated: "I do not feel safe anymore knowing I am in the area of this individual. He's just progress-

**6.** Talley's argument implicitly assumes that the trial court could only consider Skovira's oral trial testimony in deciding whether to grant the full order of protection. That is incorrect. During cross-examination, Talley specifically requested the trial court to review and consider the statements that Skovira made in her verified petitions. Talley also used those documents to question Skovira. Although neither petition was formally admitted in evidence, that is not dispositive. Because Talley asked the court, as factfinder, to review these documents and they were used as the basis for cross-examination, both petitions were constructively admitted in evidence. *See Harris v. Divine,* 272 S.W.3d 478, 483 (Mo.App.2008) (exhibit deemed constructively admitted even though it was never offered and received into evidence where it was testified to and used in evidence); *State v. Sanders,* 608 S.W.2d 507, 509 (Mo.App.1980) (although exhibit not formally offered and admitted is deemed "in evidence" because it was treated by both sides as if it had been received into evidence); *see also State v. Gott,* 191 S.W.3d 113, 115 n. 3 (Mo.App.2006); *Clark v. FAG Bearings Corp.,* 134 S.W.3d 730, 737 (Mo.App.2004); *Main Street Feeds, Inc. v. Hall,* 975 S.W.2d 227, 230 n. 3 (Mo.App. 1998); *Weule v. Cigna Property and Cas. Companies,* 877 S.W.2d 202, 203–04 (Mo.App. 1994).

ing with everything he's done and I'm scared to even think about what's next." Skovira then provided a detailed account of Talley's "continuous" and "progressing" conduct since July 2010, which first consisted of Talley's sexual comments and gestures, calls, texts and driving by her house. Despite "negative counseling" and in violation of the first no-contact order, Talley continued to send messages to Skovira about wedding dates and even sent her a wedding ring by way of her roommate. Although again ordered not to contact Skovira directly, Talley nevertheless continued his pursuit of her by following her friend and attempting to contact Skovira through that person. Talley had driven by Skovira's house and knew she was not home at that time. Skovira also caught Talley nearby snapping photos of her. He also tried to move into the barracks next door to Skovira on two occasions, the latter incident occurring only a few weeks before trial. Finally, Skovira testified that she filed this civil action on the very same day the third no-contact order issued because she had no confidence that the military could protect her from Talley.

Viewing the record in the light most favorable to the judgment, as we must, we hold that there was sufficient evidence from which the trial court could reasonably infer that Talley's conduct caused Skovira to subjectively fear physical harm and that a reasonable person would have feared physical harm under the same circumstances. *See, e.g., State v. M.L.S.,* 275 S.W.3d 293, 298–99 (Mo.App.2008) (although direct testimony from wife regarding apprehension was lacking, reasonable inferences from the evidence presented established her apprehension of immediate physical injury required for third-degree domestic assault). There was evidence that Talley, a much older man than Skovira, had violated three military no-contact orders and that his behavior was continuing, unpredictable and escalating. The trial judge is in the best position to not only gauge the credibility of the witnesses, but also to "determine the existence of any reasonable apprehension of abuse that a petitioner may harbor; conversely, the judge can determine whether a given respondent appears capable of the feared abuse." *Parkhurst v. Parkhurst,* 793 S.W.2d 634, 636 (Mo.App.1990). Here, the trial court expressly found Skovira credible and obviously determined that she harbored a reasonable fear of physical harm and that Talley appeared capable of inflicting such harm. Particularly on this record, we defer to the trial court's findings in this regard. *See id.* at 637 (affirming a full order of protection based on the entire record and "the court's superior ability to evaluate the potential for abuse by the testimony and demeanor of the witnesses"); *Brown v. Yettaw,* 116 S.W.3d 733, 737 (Mo.App.2003) (similar holding); *see also Vinson v. Adams,* 188 S.W.3d 461, 465 (Mo.App.2006) (citing *Parkhurst* and rejecting defendant's argument that none of his actions or words reasonably could have caused the plaintiff to become alarmed). The evidence in the case at bar was sufficient to prove a course of conduct by Talley that actually caused alarm to Skovira and that would have caused alarm to a reasonable person. The trial court did not err in granting her a full order of protection based on stalking. Point denied.

The judgment of the trial court is affirmed.

DANIEL E. SCOTT, J., and WILLIAM W. FRANCIS, P.J., Concur.