Lisa Marie BECKERS, Respondent,

v.

Kenneth P. SECK, Appellant.

No. WD 56481.

Missouri Court of Appeals,
Western District.

Jan. 18, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 29, 2000.

Application for Transfer Denied
April 25, 2000.

Catherine Moore, Mission, KS, for Respondent.

Kenneth Seck, Overland Park, KS, acting pro se.

Before: Presiding Judge
LOWENSTEIN, Judge LAURA
DENVIR STITH and Judge RIEDERER.

HAROLD L. LOWENSTEIN, Judge.

## FACTS

This is an appeal from a renewal of a full order of protection granted to respondent, Lisa Marie Beckers, who is appellant's niece. The order of protection was issued under Missouri's Adult Abuse chapter as contained in §§ 455.010–455.085, RSMo 1994, and arose out of letters, phone calls, threats and harassment made by appellant Ken Seck, repeatedly accusing Beckers of being liable for her mother's death from an apparent suicide.

 It must be first noted that the order of protection appealed from expired by its own terms on September 2, 1999, while this appeal was pending, rendering the issues raised here moot. *See generally In Interest of K.E.B., etc. v. H.G.B.* 782 S.W.2d 85 (Mo.App.1989). However, dismissal is discretionary in a moot case, and this court can exercise its jurisdiction if the "appeal puts at stake some legal principle on a public question not previously ruled." *In Interest of L.W.*, 882 S.W.2d 290, 291 (Mo.App.1994) (citations omitted). This court can exercise its jurisdiction where an appeal presents an issue which "is of general public interest and importance ..., will evade appellate review unless the court exercises its special jurisdic-

tion... or will recur." *McGrath v. McGrath,* 939 S.W.2d 46, 47 (Mo.App.1997) (citations omitted). Accordingly, this court will address respondent's points as the case arises from a unique fact pattern and involves questions of first impression concerning the sufficiency of minimum contacts under the Missouri Long Arm statute.

Respondent's mother died on April 16, 1997. Within the next two months, appellant (who at all times lived in Johnson County, KS) made four phone calls to respondent's answering machine in Jackson County, MO. Appellant stated in these messages that the "ordeal was about to begin and it wasn't going to be the rapture." Although the meaning of this language is disputed, respondent testified that she interpreted "the rapture" as referring to death. Appellant testified the "ordeal" meant he was going to talk to respondent's twin sons' father about taking custody away from respondent. Appellant also left messages on respondent's father's answering machine in Jackson County, MO. For the next six months, there was no contact between appellant and respondent.

On approximately December 16, 1997, appellant wrote and distributed a "Christmas letter" to friends, relatives, and neighbors of his deceased sister. This very bizarre letter blamed the death on respondent and threatened her safety. The letter was sent to respondent at her residence in Jackson County, MO, as well as to at least two other relatives who were residents of Jackson County.

On December 19, 1997, respondent sought an order of protection in Jackson County, as a direct result of the Christmas letter, and appellant was served on January 6, 1998, in Johnson County, KS. Respondent claimed in her petition for protective order that appellant was stalking her, making threatening phone calls, frequently coming to her work, and distributing threatening material. Respondent further claimed that there was an immediate

and present danger of abuse to her and she feared that the abuse/stalking would continue in the future because of the Christmas letter her uncle had distributed, the telephone calls he had made, and the fact that he had a gun.

After the ex parte order was issued, appellant sent two additional memo letters to respondent at her business in Johnson County, KS, on January 8 and 9, 1998.

Seck, who has represented himself throughout, made a special appearance attacking personal jurisdiction since he was a Kansas resident and there was no provision in the Missouri Long Arm statute to render him subject to an adult abuse claim in this state.

After an evidentiary hearing on January 12, 1998, a full order of protection was granted against appellant which would expire on July 11, 1998. The court found it had jurisdiction, and that appellant's service was proper based on his acts in Missouri. Seck appealed to this court, but the appeal was ultimately dismissed for lack of a final judgment. Respondent then filed a motion to renew the full order of protection on June 26, 1998, and received several interim ex parte orders until appellant was served on August 19, 1998, again, in Johnson County, KS. In her pleading to renew the full order, respondent claimed she was still subject to letters from her uncle and that he had filed a lawsuit against her in Kansas in April. Respondent claimed this Kansas suit was in retaliation for her having obtained the protective order in January, 1998.

Prior to the hearing on the renewal, Seck again attacked the court's jurisdiction over him because of the lack of his contacts in Missouri. As stated earlier, the trial court in September 1998, found jurisdiction and entered a renewal order commanding no contact by appellant with his niece, which would expire on September 2, 1999. The court found continued harassment in Missouri. The evidence disclosed that appellant dismissed his Kansas civil suit against respondent the day following

his taking respondent's four hour deposition. The deposition was scheduled on what would have been respondent's mother's birthday.

## STANDARD OF REVIEW

"The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976).

## POINTS RELIED ON

### PERSONAL JURISDICTION

Appellant's first argument is that the trial court did not have personal jurisdiction over him because he was a nonresident of Missouri and did not have "minimum contacts" with Missouri to satisfy the due process requirements of Missouri's Long Arm statute. Section 506.500, RSMo 1994.

■ *Shirkey v. McMaster*, 876 S.W.2d 648 (Mo.App.1994) held that "[i]n passing on a motion to dismiss for lack of personal jurisdiction over a non-resident, a two step inquiry is necessary: first, whether the defendant committed one of the acts enumerated in the long arm statute; and second, whether the exercise of personal jurisdiction would violate due process." (citing *Watlow Elec. Mfg. v. Sam Dick Indus.*, 734 S.W.2d 295, 296–97 (Mo.App.1987)). "A defendant must maintain certain minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Watlow Elec. Mfg.*, 734 S.W.2d at 297 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Only the second prong of the above test is raised on appeal; whether the appellant has maintained minimum contacts with

Missouri so as not to violate his due process rights.

■ To determine if minimum contacts have been met for a Missouri court to acquire personal jurisdiction over the appellant, the following five factors should be considered: "1) the nature and quality of the contact; 2) the quantity of those contacts; 3) the relationship of the cause of action to those contacts; 4) the interest of Missouri in providing a forum for its residents; and 5) the convenience or inconvenience to the parties. *Dillaplain v. Lite Indus., Inc.,* 788 S.W.2d 530, 534 (Mo.App. 1990) citing *Watlow Elec. Mfg.,* supra at 297; *Newhard, Cook and Co. v. Inspired Life Centers, Inc.,* 708 F.Supp. 1066, 1069 (E.D.Mo.1989).

■ "Like any standard that requires a determination of 'reasonableness,' the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Farris v. Boyke,* 936 S.W.2d 197, 201 (Mo.App.1996) citing *State ex rel. Sperandio v. Clymer,* 581 S.W.2d 377, 382 (Mo. banc 1979). "Random, fortuitous or attenuated contacts with the forum state cannot create jurisdiction." *Id.* citing *Elaine K. v. Augusta Hotel, Assocs.,* 850 S.W.2d 376, 378 (Mo.App.1993) citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ In analyzing the facts at hand, the nature and quality of appellant's contact is significant. Appellant left messages on respondent's answering machine at her residence in Jackson County, MO. Further, it can be inferred through testimony that appellant sent letters to her residence in Jackson County, MO, and he contacted her father and other relatives in Jackson County, MO, either by phone or mail.

The quantity of appellant's contacts with respondent are numerous and also of great significance. There were four messages left on her answering machine, and additional calls to respondent's father's answering machine. Further, an undetermined number of "Christmas letters" were sent to relatives, friends, and family in Missouri, as well as personally delivered by appellant to friends of the decedent in Johnson County, KS.

This cause of action is inherently related to appellant's contact with respondent as this entire lawsuit is based solely on the allegedly harassing contact. The state of Missouri is obviously interested in providing a forum for its residents under harassing and stalking statutes, and respondent is a resident of Missouri. Lastly, there is clearly no inconvenience to appellant who lives in the Kansas City metropolitan area to defend this suit in Jackson County, MO.

Appellant has cited *Farris v. Boyke,* 936 S.W.2d 197 (Mo.App.1996), which states that the use of interstate mail or telephone facilities are not sufficient contacts to assert personal jurisdiction under the long-arm statute. However, due to the unique facts in the case at bar, this court finds that *Farris* is distinguishable.

The *Farris* case dealt with commercial business transactions, orders and purchases, being conducted via interstate mail and phone calls as the contact in question. The *Farris* court held that these contacts alone for business purposes were not sufficient for personal jurisdiction. In the instant case, the very contact made by appellant is the basis for respondent's request for an order of protection. There was no business taking place, and the mailings and phone calls were directed at respondent for no purposeful reason. Appellant's contact with respondent served no legitimate function. Therefore, this court holds that the appellant's contacts with respondent in Jackson County, Missouri, were sufficient minimum contacts to acquire personal jurisdiction.

■ After the determination that appellant purposefully established minimum contacts within the state of Missouri, the

following factors must be considered to determine if the assertion of personal jurisdiction comports with "fair play and substantial justice;" "1) the burden on the defendant, 2) the interest of the forum state, 3) the plaintiff's interest in obtaining relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies." *Dillaplain,* 788 S.W.2d at 535, citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 114–15, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), citing *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "The first three factors are of primary importance while the last two are of secondary importance." *Id.* at 534, citing *Watlow Elec. Mfg.,* supra at 297. "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174. See, e.g., *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Calder v. Jones,* 465 U.S. 783, 788–89, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *McGee v. Int'l Life Ins., Co.,* 355 U.S. 220, 223–24, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

■ Considering the set of facts here and these five factors, this court holds that the nature and quality of appellant's acts "serve to establish the reasonableness of the jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King,* supra. All five of these factors are obvious interests to the state of Missouri, and respondent's request for the order of protection, as well as its renewal, proves in itself her interest in obtaining relief.

■ "The basic due process test is whether the defendant has 'purposefully availed itself of the privilege of conducting activities within the forum state.' " *Farris,* 936 S.W.2d at 201 citing *Elaine K.,* 850

S.W.2d at 378. "The cornerstone of *in personam* jurisdiction is whether a defendant 'should reasonably anticipate being haled into court' in that forum." *Dillaplain,* 788 S.W.2d at 535 citing *World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. 559.

■ There is little doubt appellant knew his harassing calls and mailings were purposefully being directed at respondent in Jackson County, MO. After all, he intentionally dialed Jackson County, MO, phone numbers and knowingly sent mail to Jackson County, MO, for no reason but to contact the respondent. "Jurisdiction is proper... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174, citing *McGee,* 355 U.S. at 223, 78 S.Ct. 199. Appellant's actions were directed at respondent, who resided and received messages and mail in Jackson County, MO. The location of appellant when making the calls or mailing the letters is irrelevant as the activity was directed at respondent in Jackson County, MO, with the establishment of jurisdiction over the person of the appellant, review in Jackson County was proper under § 455.015, RSMo 1994.

Respondent has filed this order of protection in Jackson County, MO, her residence and the location where numerous letters and calls were received by the respondent. Although much activity in this saga has been originated in Kansas, enough has transpired in Missouri to establish personal jurisdiction over the appellant in Jackson County, MO. Point denied.

### SUBJECT MATTER JURISDICTION

■ Appellant next contends that the trial court had no subject matter jurisdiction over him in the hearing on September 3, 1998, which resulted in the extension of the Full Order of Protection and a Final Judgment, as there was not competent evidence of harassment or stalking.

The initial order of protection issued on January 12, 1998, provided "Respondent shall not abuse, threaten to abuse, molest, stalk or disturb the peace of the petitioner wherever she/he may be found." The extension of the order was granted and denominated into a final judgment on September 3, 1998, on the basis that petitioner claimed respondent had continued to send threatening letters.

Appellant claims that there was no subject matter jurisdiction for the final judgment as the two letters he sent to respondent did not result in harassment as defined under § 455.010, RSMo 1994, and further that they were sent to respondent at her place of business in Johnson County, KS. The fact that the letters were sent to respondent's place of business in Johnson County, KS, is irrelevant since the order of protection covered her wherever she may be.

As to the harassment issue, the trial court's findings infer that the letters were found to be threatening and disturbing to the respondent. It is only natural that appellant's continued conduct of sending demand letters to respondent after an order of protection had been granted would lead to substantial emotional distress of the petitioner.

Further, the appellant knowingly and purposely sent the letters to respondent after he was fully aware that an order of protection had been issued and served upon him. Given the history of appellant's actions and the complained of behavior leading up to the hearing, this court finds that the trial court had subject matter jurisdiction and appropriately granted the final judgment. Point denied.

### III. "NO CONTACT" LANGUAGE ADDITION TO ORDER

Appellant's final argument contends that the trial court erred by adding the words "no contact" to the Final Order since the Adult Abuse Act does not provide for such an order. The language in the judgement stated "Respondent is to have *no contact* with petitioner." The appellant cites no authority for his argument, nor does he cite any persuasive source.

The "no contact" language was added to the order for the very reason the extension and final judgment of the full order of protection was granted: to stop appellant from sending anymore letters or contacting the respondent in any way. The full order of protection implies that appellant is to have no contact of any sort with the respondent. The addition of this language is a reinstatement of what is already inherent, implicit and equitable. It is the logical extension of the Adult Abuse Act. Section 455.050.1 states the purpose of such an order is "to protect the petitioner from abuse or stalking ..." and may include enjoining the respondent from disturbing the peace of the petitioner. This point is found to be without merit and is denied.

### CONCLUSION

The trial court's final judgment renewing the Full Order of Protection is affirmed.

All concur.