C.B., Respondent,

v.

J.B., Appellant.

No. ED 96425.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 29, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 10, 2012.

Thomas J. Henderson, St. Louis, MO, for appellant.

Melanie DeRousse, St. Louis, MO, for respondent.

ROY L. RICHTER, Judge.

In this court-tried case, C.B. sought renewal of a previously granted full order of protection against her former boyfriend, J.B. Following a hearing, the trial court entered judgment, ordering renewal of the full order of protection for another year. On appeal, J.B. argues the trial court erred because the judgment was not supported by substantial evidence and the trial court erroneously applied the law. We affirm.

## I. BACKGROUND

Following a multi-year relationship, C.B. ended her involvement with her boyfriend, J.B. However, unable to independently sever ties with J.B., on May 18, 2009, C.B. filed a petition seeking an Adult Abuse/Stalking Order in the Circuit Court of St. Charles County. Along with C.B.'s petition, she included a single-page attachment that painted a tumultuous picture of the relationship itself and the time since its conclusion. During their time together, C.B. alleged a single incident of physical violence during which J.B. tore her shirt and threw her against a wall. Following the break-up, C.B. claimed that, despite her requests that J.B. cease contact with her, J.B. persisted with his harassing behavior. Among the incidents described in her petition, C.B. averred that J.B.: repeatedly drove past her home; parked on her street and then peered through the windows of her home; repeatedly knocked on her door and rang the doorbell; and repeatedly came to her work. An *ex parte* order of protection was issued against J.B. on May 18, 2009, and a hearing was set for November 18, 2009.

At the November 18, 2009 hearing, prior to the introduction of any evidence, J.B. consented to the issuance of a full order of protection, effective until November 17, 2010. On October 29, 2010, C.B. moved to

renew the order of protection, claiming that the circumstances underlying the allegations in her original petition still existed.

At the November 17, 2010 renewal hearing, C.B. testified that although J.B. had obeyed the existing order and not contacted her during the past year, she remained in fear of J.B. and believed the order of protection was the reason that J.B. had kept away. Following further inquiry by J.B.'s counsel, C.B. added that J.B. previously had trapped her in her garage, pounded on her front door, and received a trespassing ticket for parking in front of her home and refusing to leave. Throughout her testimony, C.B. consistently reiterated that she was fearful of J.B. and felt in danger.

Following the conclusion of C.B.'s testimony, in response to a question from J.B.'s counsel regarding the standard for renewal, the trial court stated:

> THE COURT: [C.B.] also testified that she remains fearful of him and that she thinks the order of protection is what's kept him away. And like I told you prior to going on the record, as far as I'm concerned, that's all I need to hear to continue this order.

Likewise, at the conclusion of J.B.'s testimony, the following exchange took place regarding the standard the trial court would apply for renewal:

> THE COURT: Okay. Like I stated before we went on the record, once at least since we've been on the record, it's my understanding that her having testified to the fact that she continues to remain in fear of [J.B.], and her testimony that she thinks the order of protection is what has kept him away, is sufficient for me to continue the order of protection, which I'm going to do."

. . .

> [COUNSEL FOR J.B.]: I do believe there needs to be preponderance of the evidence from the Petitioner indicating why she—that it's reasonableness for her to be in fear. . . . I think there need[s] to be a reasonableness standard or a preponderance of the evidence that it's reasonable that she's in fear.
>
> THE COURT: And I think she has met that burden.
>
> . . .
>
> THE COURT: Well, then there's been no violations but she remains in fear, and it's her belief that the order of protection is what has kept him away. Therefore, she believes if there's no order of protection he will have unwanted contact or communication with her. And I believe that's sufficient proof for me to issue the order, which I have already signed as we've been talking.

The trial court entered its judgment renewing the full order of protection for an additional year; expiring November 18, 2011. This appeal follows.

## II. DISCUSSION

In this court-tried case, we will affirm the judgment unless it is not supported by substantial evidence, it is against the great weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case." *Vinson v. Adams*, 192 S.W.3d 492, 494 (Mo.App. E.D.2006).

■ Moreover, the violent acts the Adult Abuse Act is intended to prevent frequently occur unpredictably, without warning or reason. Accordingly, it is "[t]he trial judge [who] is in the best position to gauge the credibility of the witnesses and to determine the existence of

any reasonable apprehension of abuse that a petitioner may harbor; conversely, the judge can determine whether a given respondent appears capable of the feared abuse." *Parkhurst v. Parkhurst,* 793 S.W.2d 634, 636 (Mo.App. E.D.1990).[1] Whether the threatened abuse has come to fruition or not is irrelevant. *Id.* at 637. It is not the function of this Court to engage in such "hindsight" review of the issuance and renewal of orders of protection. *Id.* We defer to the trial court's credibility determinations, and we view all facts and inferences in a light most favorable to the judgment. *Vinson,* 192 S.W.3d at 494.

In order to obtain a full order of protection under the Adult Abuse Act, a petitioner must prove the allegation of abuse or stalking by a preponderance of the evidence. Section 455.040.1 RSMo Cum. Supp.2009.[2] If the full order of protection is issued, it may then be renewed for a period ranging from 180 days to one year from the expiration date of the original order. Section 455.040.1. The statute is conspicuously silent, though, as to the standard to be applied when a petitioner moves for renewal. Absent legislative guidance, this Court took up the issue in *Capps v. Capps,* 715 S.W.2d 547 (Mo.App. E.D.1986).

In *Capps,* this Court was confronted with whether a renewal of a full order of protection is a civil action for purposes of a Rule 51.05(a) change of judge motion. 715 S.W.2d at 551–52. In finding that a renewal proceeding is not a civil proceeding for purposes of Rule 51.05, the *Capps*

Court noted the lack of a renewal standard and set out to establish one. *Id.* at 552. With no guidance from the statutory language, the *Capps* Court looked to the legislature's purpose in enacting the Adult Abuse Act.

> It was adopted by the Missouri Legislature as a result of an increased awareness nationally of the prevalence of domestic violence and of the need to protect the victims of that violence. It is part of a nationwide trend to legislate in this area. Existing remedies such as peace bonds, regular criminal process, and tort law have proved to be less than adequate in aiding the victims of abuse and in preventing further abuse.

*Id.* (quoting *State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 226 (Mo. banc 1982)). With that purpose in mind, the *Capps* Court held that the legislature intended an order of protection to be renewed if "a petitioner ... proves by a preponderance of the evidence that the expiration of the Full Order will place petitioner in an immediate and present danger of abuse." [3] *Id.* In satisfying this burden, a renewal order need not be based on any new acts of abuse, although it may be. *Id.* The renewal also can be based on the "fact that the circumstances forming the basis for the initial order continue to exist" and a failure to renew will place the petitioner "in an immediate and present danger of abuse." *Id.;* *Vinson,* 192 S.W.3d at 495.

---

**1.** Although *Parkhurst* concerned the issuance of an initial full order of protection, we find the Court's discussion regarding the deference due the trial court no less applicable to renewals.

**2.** All subsequent statutory references are to RSMo Cum.Supp.2009, unless otherwise indicated.

**3.** The nonexclusive list of offenses that will constitute abuse include: assault, battery, coercion, harassment, sexual assault, and unlawful imprisonment. Sections 455.010(1)(a)–(f).

### A. The Trial Court's Judgment Is Supported By Substantial Evidence.

■ In J.B.'s first point on appeal, he asserts the trial court erred in renewing the full order of protection because the judgment was not supported by substantial evidence. Specifically, J.B. argues that C.B. failed to present sufficient evidence of either abuse or stalking at the original protection order hearing or the renewal hearing. We disagree.

Normally, in order to be granted a full order of protection, C.B. would have to prove her allegation of abuse or stalking by a preponderance of the evidence at the original, November 18, 2009 hearing. Section 455.040.1. Yet, in this case, J.B. consented to the entry of the original order; rendering any such presentation of proof moot.[4] This consent, however, did nothing to alter C.B.'s burden of proof in the renewal hearing or necessitate re-litigation of the original order. Regardless of whether the original order of protection was granted by consent or following a hearing and presentation of evidence, in order to grant a renewal, the trial court was required only to evaluate whether expiration of the original order would result in the petitioner being placed in an "immediate and present danger of abuse." Capps, 715 S.W.2d at 552.

■ In this case, sufficient evidence was adduced that C.B. was harassed by J.B. Abuse by harassment will be found "in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to an adult or child and serves no legitimate purpose." Section 455.010(1)(d). This definition contains both subjective and objective criteria.

The conduct must not only cause the petitioner to actually suffer substantial emotional distress, but the conduct must also be sufficient to cause a reasonable person to suffer such distress. C.B. v. Buchheit, 254 S.W.3d 210, 213 (Mo.App. E.D.2008); Section 455.010(1)(d). In order to rise to the level of "substantial emotional distress," the offending conduct "must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living." Buchheit, 254 S.W.3d at 213. "Conduct that merely causes alarm or distress to the victim but which would not cause substantial emotional distress to a reasonable person does not qualify as harassment." Id.

■ As a threshold matter, the testimony initially offered by C.B. was insufficient to support a renewal of the full order of protection. During direct examination by her counsel, C.B.'s testimony simply stated that she remained in fear of J.B. and, for that reason, sought renewal of the order of protection. A bare statement of fear fails to meet the standard required for renewal. Bandelier v. Bandelier, 757 S.W.2d 281, 283 (Mo.App. W.D.1988); see also Parkhurst, 793 S.W.2d at 637 (Although a statement of fear is, by itself, not enough for the issuance of a full order of protection, "the trial court is in best position to determine the necessity of the order at the time of the hearing.").

Despite the insufficiency of C.B.'s initial testimony, J.B.'s trial counsel cross examined C.B. regarding the foundation for her fear of J.B.[5] The answers elicited from

---

4. By consenting to the full order of protection, J.B. did not admit to the allegations contained in C.B.'s petition, but nonetheless agreed to cease all contact with C.B.

5. Over C.B.'s objection, the trial court allowed this line of questioning regarding J.B.'s past acts. Prior to the hearing, C.B. submitted a motion in limine that requested the trial

C.B. presented a clear image of J.B.'s untoward and threatening behavior, to wit: J.B.'s many unannounced visits to C.B.'s home and repeated knocking at her door; J.B.'s recurring visits to C.B.'s place of business; J.B.'s trapping of C.B. in her garage; and J.B.'s steadfast refusal to move his parked car from the front of C.B.'s house until C.B. called the police and J.B. was ticketed for trespassing. All of these instances occurred after C.B. told J.B. that she desired no further contact with him. Accordingly, we infer that a reasonable person would suffer substantial emotional distress as a result of J.B.'s actions. See Section 455.010(1)(d) (Harassing conduct might include: "[f]ollowing another about in a public place or places, [or] [p]eering in the window or lingering outside the residence of another...").

Likewise, the record is replete with support that C.B. actually suffered substantial emotional distress. C.B. requested that J.B. cease contact with her. Undeterred, J.B. continued his unwelcome, unannounced, and threatening behavior. Not until C.B. filed for an *ex parte* order of protection did J.B.'s worrisome behavior cease. Throughout the renewal hearing, C.B. reiterated her fear of J.B. She stated, "I feel I'm still in danger of him. I'm in fear of him. I feel that the order of protection works and keeps him away from me." This statement not only demonstrates her substantial emotional distress but also her belief that a failure to renew the order would result in the resumption of J.B.'s harassing behavior.

█ Despite J.B.'s assertion that his adherence to the full order of protection militates against the order's renewal, the trial court is not required to find a subsequent act of abuse to renew an order of

protection. *Vinson*, 192 S.W.3d at 494–95. We review the evidence and reasonable inferences in a light most favorable to the judgment. *Brethorst v. Brethorst*, 50 S.W.3d 864, 866 (Mo.App. E.D.2001). When considered together—C.B.'s tumultuous experience with J.B. in the time preceding her petition for an order of protection, J.B.'s cessation of those activities only upon the issuance of such order, and C.B.'s testimony regarding her continued fear of J.B. and the efficacy of the order— we find that the trial court did not err in finding that expiration of the full order would place C.B. in an "immediate and present danger of abuse." Point denied.

### B. The Trial Court Correctly Applied the Capps Standard.

█ In J.B.'s second point on appeal, he argues the trial court erred in renewing the order of protection because it misapplied the law and based its judgment solely on C.B.'s statement that she was still in fear. We disagree.

We will defer to the trial court's factual determinations, reviewing the evidence in a light most favorable to the judgment and disregarding all contrary evidence. *Langdon v. United Rests., Inc.*, 105 S.W.3d 882, 886 (Mo.App. W.D.2003). Questions of law, however, are reserved for the independent judgment of the appellate court without deference to the trial court's determination. *Id.*

At various points in the renewal hearing, the trial court alluded to what it would consider sufficient proof for renewal of the order. J.B. asserts that those statements prove the trial court misstated the law and renewed the order solely based on C.B.'s

---

court forbid the introduction of evidence predating the entry of the original full order of protection. Although the motion was granted, the trial court nonetheless afforded J.B. the latitude to pursue this line of questioning.

statement that she remained in fear of J.B. This argument is without merit.

At the conclusion of the hearing, following testimony by both C.B. and J.B., the trial court gave a brief explanation for its decision to renew the order of protection.

THE COURT: Well, then there's been no violations but [C.B.] remains in fear, and it's her belief that the order of protection is what has kept [J.B.] away. Therefore, she believes if there's no order of protection he will have unwanted contact or communication with her. And I believe that's sufficient proof for me to issue the order, which I have already signed as we've been talking.

Throughout the hearing the trial court made similar statements regarding the burden of proof. Contrary to J.B.'s contention, such statements are not evidence that the trial court ignored the standard for renewal set forth in *Capps*, 715 S.W.2d at 551–52. Upon review of the record, it appears the trial court was instead attempting to demonstrate, in an admittedly circuitous manner, its proper application of the *Capps* standard.

As outlined above, the trial court was presented with substantial evidence concerning the abuse that led C.B. to seek the original order of protection and the renewal of that order. Furthermore, C.B. testified that she considered herself to be in an immediate danger of abuse if the full order was not renewed. After consideration of that evidence, the trial court held that C.B. proved by a preponderance of the evidence that: (1) she was reasonably in fear of J.B.; (2) absent the protection order, J.B. would have unwanted contact or communication with C.B.; and (3) those factors were sufficient proof to renew the order of protection. Put another way, the trial court was persuaded that allowing the full order of protection to expire would subject C.B. to an immediate and present danger of abuse. This was a proper application of the standard for renewal. *See Capps*, 715 S.W.2d at 552; *Vinson*, 192 S.W.3d at 494–95. Point denied.

## III. CONCLUSION

The judgment is affirmed.

CLIFFORD H. AHRENS, P.J., and GARY M. GAERTNER, JR., J., concur.