

# Missouri Court of Appeals

## Southern District

### Division Two

STEVEN E. PERREN, )
)
    Petitioner-Respondent, )
)
v. ) No. SD33817
)
DANIEL A. PERREN, ) **Filed: Dec. 11, 2015**
)
    Respondent-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF RIPLEY COUNTY

Honorable John H. Shock, Associate Circuit Judge

**<u>AFFIRMED</u>**

Appellant Daniel A. Perren and Respondent Steven E. Perren are brothers.[1] The two have a "strained" relationship, and there have been "all kinds of ex partes and fights and quarrels between" them.[2] One of those fights resulted in a bench trial on Steven's petition for an order of protection. The trial court found that Steven had "proven allegations of domestic violence and/or stalking against" Daniel, and it entered a full order of protection that ordered Daniel not to communicate with Steven and "not [to] commit or threaten to

---

[1] Because the parties share the same last name, we will refer to them by their given names to avoid confusion. In doing so, we do not intend any disrespect or familiarity.

[2] Two additional brothers have become enmeshed in these quarrels -- one on the "side" of Steven and the other on the side of Daniel.

1

commit domestic violence, molest, stalk, or disturb the peace" of Steven for one year. *See* section 455.050.1.[3]

Daniel now appeals that order, claiming in a single point relied on that the "evidence was insufficient to enter the full order of protection, in that [Daniel]'s use of physical force in defense of his property was justified under [section] 563.041.1 RSMO and this justification constituted an absolute defense[.]" Because the trial court was not required to believe the evidence supporting Daniel's claim that he was justified in assaulting Steven, we affirm.[4]

> "Because there is real harm that can result in abusing the Adult Abuse Act and its provisions [. . .] trial courts must exercise great care to ensure that sufficient evidence exists to support all elements of the statute before entering a full order of protection." *McGrath v. Bowen,* 192 S.W.3d 515, 517 (Mo.App.2006); *see Overstreet v. Kixmiller,* 120 S.W.3d 257, 259 (Mo.App.2003); *Glover v. Michaud,* 222 S.W.3d 347, 351–52 (Mo.App.2007). The Act is not, nor was it intended to be, "a solution for minor arguments between adults." *Binggeli v. Hammond,* 300 S.W.3d 621, 624 (Mo.App.2010).

> Nevertheless, we presume the trial court's judgment is correct, and [the appellant] bears the burden of proving it erroneous. *Surrey Condominium Ass'n, Inc. v. Webb,* 163 S.W.3d 531, 535 (Mo.App.2005). Appellate review in this court-tried case is governed by Rule 84.13(d). *Dennis v. Henley,* 314 S.W.3d 786, 787 (Mo.App.2010). "The trial court's judgment must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.*; *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

> On appeal, this Court views all facts and inferences in a light most favorable to the judgment. *C.B. v. J.B.,* 356 S.W.3d 790, 793 (Mo.App.2011); *Vinson v. Adams,* 188 S.W.3d 461, 464 (Mo.App.2006). "The trial judge is in the best position to gauge the credibility of the witnesses and to determine the existence of any reasonable apprehension of

---

[3] All statutory references are to RSMo Cum Supp 2013.

[4] Daniel concedes in his brief that, absent a defense of justification, "his actions constitute an act of abuse [as defined] under [s]ection 455.010[(1),]" and he relies on ***McAlister v. Strohmeyer***, 395 S.W.3d 546, 554 (Mo. App. W.D. 2013) (holding no error was committed in denying an order of protection when the trial court found the respondent's actions justified under the law). Steven claims in his brief that Daniel waived his justification defense by failing to assert it in a responsive pleading. We do not reach the issue because (for reasons explained *infra*) Daniel cannot prevail even if we presume that his affirmative defense was properly raised.

abuse that a petitioner may harbor; conversely, the judge can determine whether a given respondent appears capable of the feared abuse." *Parkhurst v. Parkhurst,* 793 S.W.2d 634, 636 (Mo.App.1990); *C.B.,* 356 S.W.3d at 792–93. We therefore defer to the trial court's credibility determinations. *C.B.,* 356 S.W.3d at 793; *Vinson,* 188 S.W.3d at 464.

*Skovira v. Talley*, 369 S.W.3d 780, 781-82 (Mo. App. S.D. 2012).

As earlier noted, Daniel concedes that his assault of Steven would constitute adult abuse supporting a full order of protection in the absence of proof of his affirmative defense of justification, and he argues that such proof included Steven's own testimony. In making this argument, Daniel overlooks the fact that "[t]he party asserting an affirmative defense bears the burden of proof." **Kansas City Power & Light Co. v. Bibb & Assocs., Inc.**, 197 S.W.3d 147, 156 (Mo. App. W.D. 2006), and "[a] party with the burden of proof cannot merely offer a submissible case; it must 'convince the fact-finder to view the facts favorably to that party.'" **Black River Elec. Coop. v. People's Cmty. State Bank**, 466 S.W.3d 638, 640 (Mo. App. S.D. 2015) (quoting **Letterman v. Dir. of Revenue**, 412 S.W.3d 459, 464 (Mo. App. S.D. 2013)). As a result, our analysis is brief.

Daniel claims he was justified in punching Steven in the head five or six times because he was defending his property, a pickup truck. Daniel cites section 563.041.1, which provides that "[a] person may . . . use physical force upon another person when and to the extent that he or she reasonably believes it necessary to prevent what he or she reasonably believes to be the commission or attempted commission by such person of stealing, property damage or tampering in any degree." He also offers the definition of "tampering in the first degree" as occurring when a person "knowing[ly] receives, possesses,

3

sells, alters, defaces, destroys or unlawfully operates an automobile without the consent of the owner." *See* section 569.080.1(2).[5]

Daniel's testimony about what took place was as follows. Steven was walking toward Daniel's truck and ignoring Daniel's shouted admonition not to get inside it. Daniel stated that "[a]t the point [Steven] opened my truck door, I could only assume that he was trying to get in my truck to either move it, steal it." Daniel did not "know what [Steven's] intentions were at the time," so he grabbed Steven and tried to pull him away from the truck. Steven pushed Daniel away, pulled himself inside Daniel's truck, and grabbed "the keys in the ignition." "At this point [says Daniel,] I'm just trying to get my keys back and [Steven]'s still hysterically manic, I guess what you would call it, and at this point I punched him in the head a couple times just to try to stun him to get him to drop my keys because I'm trying to protect my truck from being stolen or moved, or you know, he has no right to be in my truck."

Steven's testimony differed significantly from Daniel's account. According to Steven, he and a work crew were constructing "a landing area[,]" for logging trucks to use when Daniel positioned his truck close to a "gravel pile[,]" got out of the truck, climbed on top of the pile, and "refused to move off" of it. Steven was worried that Daniel's truck could be damaged by nearby equipment being used to move the gravel, but Daniel refused to move his truck. Steven then "opened the door [of the truck] to see if [Daniel's] truck was movable." Steven admitted that he did not have permission to get into Daniel's truck, but he testified that he only got inside in an attempt to escape from Daniel after Daniel assaulted him by "pinn[ing]" him against the truck with his body. According to Steven, getting inside

---

[5] Daniel cites section 569.080.2, but that subsection simply provides that the offense "is a class C felony." We presume that he meant to cite section 569.080.1(2), which contains the language Daniel relies on in his brief.

4

Daniel's truck was the only means he had of escaping from Daniel's assault. When Steven pulled himself up into the truck, Daniel "punched [him] several times . . . . real hard, hitting [him] in the back of the head[.]" Both parties agreed that Steven did not return any of Daniel's blows.

Despite his acknowledgement that "the trial court is free to believe or disbelieve any witness[,]" Daniel's point on appeal nonetheless asserts that the evidence adduced at trial was "insufficient" to support the entry of the order of protection because Daniel's "use of physical force in defense of his property was justified[.]" The fatal flaw in this argument is that it assumes the truth of the affirmative defense. "To put it simply, evidence never proves any element until the [fact-finder] says it does." *State v. Jackson*, 433 S.W.3d 390, 392 (Mo. banc 2014). "Credible, believable, even uncontradicted proof of *evidentiary* facts may not prove a contested issue of *ultimate* fact to the fact-finder's satisfaction." *Black River Elec. Coop.*, 466 S.W.3d at 640.

Because Daniel concedes that his assault on Steven would justify the entry of the order of protection absent the defense of justification, and Steven was not the proponent of that defense, the trial court could disbelieve Daniel's "proof" and rule in Steven's favor. Steven was not required to present evidence *against* Daniel's affirmative defense, and it did not matter that some of Steven's own evidence *could have* supported such a defense. *See Martin v. Durham*, 933 S.W.2d 921, 925 (Mo. App. W.D. 1996) (a verdict for the party without the burden of proof "need not be supported by *any* evidence") (emphasis added).

Daniel's point is denied, and the full order of protection is affirmed.


DON E. BURRELL, P.J. – OPINION AUTHOR
GARY W. LYNCH, J. – CONCURS
WILLIAM W. FRANCIS, JR., J. - CONCURS