IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
K.C., )
 )
 Respondent, )
 )
v. ) WD83881
 )
KENT CHAPLINE, ) Opinion filed: September 21, 2021
 )
 Appellant. )

 APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
 THE HONORABLE S. MARGENE BURNETT, JUDGE

 Division Three: Edward R. Ardini, Jr., Presiding Judge,
 Mark D. Pfeiffer, Judge and W. Douglas Thomson, Judge

 Kent Chapline (“Chapline”) appeals the judgment of the Circuit Court of Jackson County

renewing a full order of protection granted to Respondent K.C.1 Chapline, a resident of Texas,

asserts the trial court lacked personal jurisdiction over him and that K.C. failed to present sufficient

evidence to support the renewal of the full order of protection. We affirm.

 Factual and Procedural Background

 Chapline and K.C. became romantically involved while working together at a television

station in Texas. Both left their employment at the Texas television station, but continued their

romantic relationship. K.C. moved to Florida, where she has lived at all times relevant to this

1
 We refer to the individual who has sought the order of protection by her initials. See C.D.R. v. Wideman, 520 S.W.3d
839, 841 n.1 (Mo. App. W.D. 2017) (citing § 595.226, RSMo). All statutory references are to RSMo 2016.
matter. Chapline accepted a job working for a Kansas City television station. He rented an

apartment in Kansas City, Missouri, where he stayed during the week and every other weekend.

The remaining weekends he returned to his residence in Texas, which he shared with his wife and

children. K.C. periodically visited Chapline on the weekends he stayed in Kansas City.

 K.C. visited Chapline in Kansas City on the weekend of October 7, 2018. While at

Chapline’s apartment, K.C. and Chapline got into an argument about Chapline’s wife. Four days

later, K.C. filed a petition for an order of protection with the Circuit Court of Jackson County

(“trial court”), alleging that during the altercation Chapline pinned her facedown on the bed which

prevented her from breathing, bent her arm behind her back “despite [her] pleas and screams for

him to stop,” and stood in the doorway, blocking her from leaving the bedroom. The trial court

entered an ex parte order of protection, which was served upon Chapline at his place of

employment in Kansas City, Missouri.2

 The trial court conducted a hearing in January 2019, at which both parties testified. K.C.

stated that during their argument on October 7, 2018, Chapline “threw something at [her] back as

[she] was leaving the bedroom and it hit [her] hip and that’s what started . . . his attack on [her].”

She stated that when she tried to “get [her] stuff together” to leave, Chapline “got really angry with

[her] and he pinned [her] down on the bed and he pinned [her] left arm behind [her] shoulder and

just kept pressing down and [she] was screaming and crying, asking for him to stop.” She testified

that “he pressed [her] head into the pillow,” making it “so hard to breathe.” She further testified

that, as a result of the altercation, she “had all sorts of bruises on [her] back,” “breast and legs and

then the worst were on [her] left arm, there was a hand print, but it was a bruise.” Immediately

2
 Upon the filing of a petition for order of protection, “and for good cause shown in the petition, the court may
immediately issue an ex parte order of protection.” § 455.035.1. “An ex parte order of protection entered by the court
shall take effect when entered and shall remain in effect until there is valid service of process and a hearing is held on
the motion.” Id.

 2
after the altercation, K.C. attempted suicide in Chapline’s bathroom by ingesting pills. Chapline

called the police and K.C. was taken to the hospital. She testified at the hearing that she was “still

afraid of” Chapline.

 Chapline testified that the altercation occurred because K.C. “was threatening to call [his]

wife and tell [his] wife that she was visiting [him] here in Kansas City.” He stated that “at one

point [K.C.] got ahold of [his] phone unlocked and was telling [him] she was going to call [his]

wife.” According to Chapline, K.C. “curled up into a ball” on the bed with his phone, and he “was

not attacking her, [he] was trying to retrieve [his] phone from her.” Chapline denied trapping K.C.

in the bedroom, holding her down, forcing her head into the pillow, or twisting her arm behind her

back.

 At the conclusion of the hearing, the trial court found “under the evidence that [K.C.] is

entitled to a full order of protection.” On January 16, 2019, the trial court entered a “Judgment of

the Full Order of Protection,” which prohibited Chapline from communicating with K.C.,

including through third parties; committing or threatening to commit “domestic violence,

molesting, stalking, sexual assault, or disturbing the peace” of K.C.; harassing or threatening K.C.;

engaging in conduct that would place K.C. in reasonable fear of bodily injury; or using, attempting

to use, or threatening to use, physical force against K.C. that would reasonably cause bodily injury.

The judgment was effective until January 15, 2020, “unless sooner terminated or extended by [the]

court.”

 In March 2019, Chapline moved out of his apartment in Kansas City and started a new job

in Texas. From that point on, he resided solely in Texas. On December 2, 2019, Chapline filed a

lawsuit against K.C. in Texas state court, asserting claims of “Tortious Interference w[ith]

Contract/Business Relations” and “Intentional Infliction of Emotional Distress.” Chapline alleged

 3
that he had been terminated from two jobs as a result of K.C. contacting his employers and making

“false assertions . . . in a concerted effort to interfere with his employment relationship[s].” He

also alleged that K.C. contacted police in Texas and falsely accused Chapline of mistreating his

son, which prompted officers to visit his home and conduct a welfare check.

 Approximately two weeks later, K.C. filed in this action a motion for renewal of the

protective order. As grounds for her request, K.C. checked the following boxes on the form motion:

“The expiration of the full order will place me in immediate and present danger of domestic

violence or stalking,” “The circumstances forming the basis for the initial order continue to exist,”

and “Other reasons.” Under “Other reasons” she wrote, “Kent Chapline terrifies me after he

assaulted me on 10/07/2018.” The form motion required K.C. to list her and Chapline’s addresses:

she listed her address in Florida and his in Texas. The trial court set a hearing to occur on February

5, 2020.

 Chapline filed a motion to dismiss for lack of personal jurisdiction and affidavit in support.

Chapline argued that K.C.’s motion to renew the protective order did not establish Chapline—who

no longer lived or worked in Missouri—had sufficient contacts with the state to warrant the trial

court’s exercise of personal jurisdiction over him. On January 21, 2020, Chapline propounded

discovery requests—including requests for admission—on K.C., and filed a motion for

continuance of the hearing “so as to allow sufficient time for [K.C.] to reply” to his discovery

requests. The trial court granted Chapline’s request and continued the hearing to February 26,

2020.

 Chapline did not appear at the February 26, 2020 hearing, but his counsel appeared on his

behalf. At the outset of the hearing, Chapline’s counsel renewed Chapline’s “objections to the

Court’s exercise of personal jurisdiction and reassert[ed] his motion to dismiss for lack of the

 4
same.” The trial court denied the motion, finding “[t]he Court had original jurisdiction, and the

Court has continuing jurisdiction as a result of the jurisdiction initially attaching.”

 The trial court proceeded to hear evidence. K.C. testified on direct examination as follows:

 Q. You’ve asked the Court to renew your Order of Protection here today. Is that
 correct?

 A. Yes, ma’am.

 Q. Is that because the basis for your original petition still exists?

 A. Yes, ma’am.

 Q. And is that that you’re still afraid of the respondent?

 A. Yes, ma’am.

 Q. Okay. And can you tell the Court why you are still afraid of him?

 A. I think he’ll hurt me. I think he continues to stalk me on social media. He’s filed
 a civil suit in Texas against me over the Order of Protection, and I feel that’s
 harassment.

 ...

 Q. And you said that you believe he continues to stalk you on social media?

 A. Yes, ma’am.

 Q. And you believe he knows where you are?

 A. Yes, ma’am.

 On cross-examination, K.C. provided additional testimony as to her grounds for seeking

renewal of the protective order. When asked by Chapline’s counsel how she knew that Chapline

“ha[d] stalked [her] on social media,” she responded: “Through court documents you filed. You

had screen grabs of my personal [T]witter that came from him. And he’s blocked on my Twitter

account. He was told to leave me alone.” She also testified that:

 5
 I got four call - - blocked ID calls from a person. And the fourth time I answered,
 there was just breathing into the phone. And I confronted him and said Kent, if this
 is you, you’re violating an Order of Protection and I will call the police. And it just
 hung up and I never got them again. And, so, then I was really afraid because I
 thought what if he’s coming to get me or something. And, so I looked at [Chapline’s
 son’s] Twitter to see if he had said anything like I just took my dad to the airport or
 my dad’s out of town for a few days or something, and then he said his dad had hit
 him and beat him up.

She also testified that she was still “[v]ery afraid of” Chapline.

 At the conclusion of the hearing, the trial court “having heard the testimony of [K.C.]

[found] that a preponderance of the evidence has been shown” and “[t]he Court will extend this

for an additional one year.” On February 26, 2020, the trial court entered its judgment, which

provided that “[t]his Judgment renews the Judgment of the Full Order of Protection entered on

January 16, 2019 and serves as notice of the extension of that Judgment.” The judgment also

provided that it “shall be effective until February 24, 2021, unless sooner terminated or extended

by [the] court.”

 Chapline filed a Verified Motion for a New Trial or, in the Alternate, to Amend, Vacate,

or Reopen the Judgment. Chapline argued K.C. failed to present any evidence at the renewal

hearing that he “had any contacts with the State of Missouri since the initial Order of Protection

was entered on January 16, 2019,” and thus the trial court violated his due process rights by

renewing the order of protection “without properly acquiring jurisdiction over [him].” He also

asserted that the renewal of the order of protection violated his “right of access to the courts”

because the order “will force [him] to abandon his Texas Lawsuit or subject him to the imposition

of criminal sanctions.” Finally, as relevant to this appeal, Chapline asserted the trial court erred in

renewing the protective order and in admitting K.C.’s testimony at the hearing in that K.C.’s failure

 6
to timely respond to his requests for admissions rendered them all admitted, and such admissions

defeated her claim.3

 The trial court took no action on the motion, effectively denying the motion 90 days after

it was filed. See Rule 78.06 (a motion for new trial is overruled if the trial court does not rule on

the motion within 90 days of its filing). Chapline appealed.

 Standard of Review

 “The decree or judgment of the trial court will be sustained by the appellate court unless

there is no substantial evidence to support it, unless it is against the weight of the evidence, unless

it erroneously declares the law, or unless it erroneously applies the law.” Beckers v. Seck, 14

S.W.3d 139, 142 (Mo. App. W.D. 2000) (quoting Murphy v. Carron, 536 S.W.2d 30, 32 (Mo.

banc 1976)).

 Analysis

 Chapline asserts two points on appeal. In his first point, he argues the trial court erred in

renewing the order of protection “in that the trial court’s exercise of personal jurisdiction over

[him] deprived him of due process rights secured by the Fifth and Fourteenth Amendments of the

United States Constitution and the laws of the State of Missouri[.]” He also asserts in this point

that “the trial court’s renewal infringes [his] right of access to the courts secured by the First and

Fourteenth Amendments of the United States Constitution and the Missouri Constitution,”

referring to the protective order’s effect on his ability to proceed in his Texas lawsuit.4 In his

3
 For example, two of the requests for admissions Chapline propounded upon K.C. were: “The circumstances forming
the basis of the initial order of protection do not continue to exist because Mr. Chapline no longer lives in Missouri”
and “An expiration of the Full Order of Protection will not place you in immediate and present danger of domestic
abuse from Mr. Chapline.”
4
 This point is multifarious, as it raises two distinct legal issues. See NutraPet Sys., LLC v. Proviera Biotech, LLC,
542 S.W.3d 410, 413 n.6 (Mo. App. W.D. 2017) (“Points that include more than one issue are multifarious and
preserve nothing for review.”). We nonetheless will exercise our discretion to review the claims of error raised in this

 7
second point, he argues the trial court erred in renewing the order of protection “because granting

the renewal was against the weight of the evidence, was not supported by substantial evidence,

and constituted an erroneous declaration and application of the law[.]”5

 Before we address Chapline’s points, however, we first address K.C.’s argument that

Chapline’s appeal is moot because the renewed order of protection has expired. Although K.C.

does not reference it in her brief—filed April 19, 2021—the order of protection was renewed again

on February 24, 2021, and is effective until February 23, 2022. Thus, Chapline’s appeal is not

moot. See Vinson v. Adams, 188 S.W.3d 461, 464 n.2 (Mo. App. E.D. 2006) (appeal of original

protective order was not moot even though the order’s original effective date had passed; the order

had been renewed and was effective at the time of the appeal).6

 Point I - Personal Jurisdiction

 Chapline first asserts the trial court violated his “constitutional right to due process by

entering the second Judgment of Full Order of Protection without having acquired personal

jurisdiction over him.” We disagree, and find the trial court had personal jurisdiction over Chapline

to renew the original order of protection.

point. See Langston v. Langston, 615 S.W.3d 109, 116 (Mo. App. W.D. 2020) (noting our preference to decide appeals
on the merits and reviewing multifarious points on appeal ex gratia).
5
 This point, too, is multifarious. “[A] substantial-evidence challenge, a misapplication-of-law challenge, and an
against-the-weight-of-the-evidence challenge” are “distinct claims,” which “must appear in separate points relied on
in the appellant’s brief to be preserved for appellate review.” Ivie v. Smith, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014).
As with Chapline’s first point, we will, nonetheless, review this point ex gratia.
6
 However, even if the February 24, 2021 renewal had not occurred, we would still review the merits of Chapline’s
appeal pursuant to section 455.007, which provides that, “Notwithstanding any other provision of law to the contrary,
the public interest exception to the mootness doctrine shall apply to an appeal of a full order of protection which has
expired.” See C.D.R. v. Wideman, 520 S.W.3d 839, 842 (Mo. App. W.D. 2017) (evaluating the substantive issues in
the appeal pursuant to section 455.007, even though the order of protection expired prior to the case being submitted
to this Court on appeal); see also Austin v. Jarred, 578 S.W.3d 847, 851 n.3 (Mo. App. S.D. 2019); K.L.M. v. B.A.G.,
532 S.W.3d 706, 709-10 (Mo. App. E.D. 2017).

 8
 “Personal jurisdiction” refers to “the power of a court to require a person to respond to a

legal proceeding that may affect the person’s rights or interests.” Webb ex rel. J.C.W. v. Wyciskalla,

275 S.W.3d 249, 253 (Mo. banc 2009). “For personal jurisdiction to exist, due process requires a

defendant to have certain minimum contacts with the forum such that the maintenance of the suit

does not offend traditional notions of fair play and substantial justice.” State ex rel. Nixon v. Beer

Nuts, Ltd., 29 S.W.3d 828, 834 (Mo. App. E.D. 2000) (citing Int’l Shoe Co. v. Washington, 326

U.S. 310, 316 (1945)).

 Chapline has never disputed that the trial court enjoyed personal jurisdiction over him when

it entered the original Judgment of Full Order of Protection. Indeed, Missouri courts have

jurisdiction over an individual, like Chapline, who has committed acts of domestic violence in

Missouri against a non-resident temporarily present in the state, like K.C.:

 In addition to any other jurisdictional grounds provided by law, a court shall have
 jurisdiction to enter an order of protection restraining or enjoining the respondent
 [here, Chapline] from committing or threatening to commit domestic violence,
 stalking, sexual assault, molesting or disturbing the peace of petitioner [here, K.C.]
 . . . if the petitioner is present, whether permanently or on a temporary basis within
 the state of Missouri and if the respondent’s actions constituting domestic violence
 have occurred, have been attempted or have been threatened within the state of
 Missouri.

§ 455.032. In light of the above, Chapline’s argument on appeal focuses solely on his lack of

contacts with Missouri during the time period between the entry of the original order of protection

and its renewal. However, we find this narrow focus misapprehends the nature of renewal

proceedings.

 Chapline’s argument is premised on the notion that the renewal of a protective order is a

“start over”; in other words, it is as if the action begins anew and a fresh inquiry into personal

jurisdiction must occur at the time renewal is sought. But the action does not start anew; a judgment

renewing an order of protection does just that, it renews or extends the original order entered earlier

 9
in the same matter.7 See § 455.040.1 (governing the process to obtain a full order of protection and

its renewal). Thus, because the trial court had acquired personal jurisdiction over Chapline at the

outset of this matter—and there is no dispute that it did—it was vested (and remained vested) with

the authority to make rulings affecting Chapline in this action, including the power to issue and

later renew the order of protection in favor of K.C.

 Our conclusion is supported by this Court’s decision in Beckers v. Seck, the only Missouri

case addressing a trial court’s exercise of personal jurisdiction relating to renewal orders. See 14

S.W.3d 139. In Beckers, a Missouri resident (“Niece”) sought a protective order in a Missouri

court against her uncle (“Uncle”) who lived in Kansas. Id. at 141. The grounds for the protective

order arose out of letters, phone calls, threats, and harassment made by Uncle repeatedly accusing

Niece of being at fault for her mother’s suicide. Id. The trial court entered a full order of protection,

and subsequently renewed the order at Niece’s request. Id. at 142. Uncle appealed the renewal of

the protective order, arguing the trial court lacked personal jurisdiction over him because he “did

not have ‘minimum contacts’ with Missouri” to satisfy due process requirements.8 Id. After

reviewing Uncle’s contacts with the state, we determined that “enough ha[d] transpired in Missouri

to establish personal jurisdiction over” Uncle. Id. at 144. Notably, in finding the trial court had

jurisdiction to enter the renewal order, we did not limit our analysis to only those contacts that

occurred between the original order and its renewal. See id. at 143-44. Rather, we relied on contacts

that occurred prior to—and that formed the basis for—the original order of protection. See id.

7
 Consistent with this premise, K.C.’s motion “request[ed] that the court renew the Full Order of Protection that was
issued against [Chapline] on Jan. 16, 2019,” and the February 2020 judgment provided that, “This Judgment renews
the Judgment of the Full Order of Protection entered on January 16, 2019 and serves as notice of the extension of that
Judgment.” (Emphasis added).
8
 Uncle had attempted to appeal the original order of protection after it was entered, “but the appeal was ultimately
dismissed for lack of a final judgment.” Beckers, 14 S.W.3d at 142.

 10
 Applying a similar analysis here, we find the trial court had personal jurisdiction over

Chapline to renew the original protective order. As explained above, by committing acts of

domestic violence in this state, Chapline subjected himself to the authority of Missouri courts, and

the trial court had the power to enter a protective order against him. The trial court never “lost”

personal jurisdiction over Chapline relating to the original protective order, and thus retained

authority to renew that order. See § 455.090.1 (“The court shall retain jurisdiction over the full

order of protection issued under this chapter for its entire duration.”). Accordingly, we reject

Chapline’s claim on appeal that the trial court lacked personal jurisdiction over him to enter the

February 2020 judgment renewing the order of protection.

 Point I - Access to the Courts

 Chapline next argues that the “trial court also infringed [his] First Amendment right of

access to the courts—also protected by the Missouri Constitution—by entering the second

Judgment of Full Order of Protection because doing so opened the lawsuit he filed against [K.C.]

in Texas to collateral attack as a violation of the terms of the Order.” Other than repeatedly citing

the general right of access to the courts guaranteed by the U.S. and Missouri constitutions,

Chapline does not proffer any support for his claim. He does not cite a single case in which a court

found an individual’s right to access the courts was violated by the issuance of a protective order,

nor does he explain how this protective order bars him from proceeding in his Texas lawsuit or

what provision of the order imposes “an affirmative obligation on him to abandon his Texas

lawsuit or run the risk of criminal sanctions for violating the Missouri order of protection,” as he

claims. In short, Chapline has not demonstrated—and we fail to discern—how his constitutional

 11
rights were violated by the trial court’s renewal of a valid9 protective order against him based on

his own volitional conduct.

 Point I is denied.

 Point II – Evidence Supporting Renewal

 In his second point, Chapline asserts that “the trial court’s renewal of the Judgment of Full

Order of Protection was against the weight of the evidence, was not supported by substantial

evidence, and constituted an erroneous declaration and application of the law because [K.C.] failed

to meet her burdens of proof and she admitted elements that defeated her cause of action.” As

previously noted, each of these challenges are separate and distinct, requiring different analytical

frameworks. See Ivie v. Smith, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). Upon review of

Chapline’s brief, the crux of his argument appears to be that the judgment renewing the protective

order was not supported by substantial evidence, and thus that is the sole claim we address.

“Substantial evidence is competent evidence from which the trier of fact could reasonably decide

the case.” Vinson v. Adams, 192 S.W.3d 492, 494 (Mo. App. E.D. 2006). In determining whether

the judgment is supported by substantial evidence, “[w]e defer to the trial court’s determinations

regarding credibility and view all facts and inferences therefrom favorably to the judgment.” Id.

 To obtain renewal of a protective order, “the petitioner must prove by a preponderance of

the evidence that expiration of the full order will place the petitioner in an immediate and present

danger of abuse.” Id. at 495 (internal marks omitted). “In satisfying this burden, a renewal order

need not be based on any new acts of abuse, although it may be.” C.B. v. J.B., 356 S.W.3d 790,

793 (Mo. App. E.D. 2011); see also § 455.040.1 (“For purposes of this subsection, a finding by

the court of a subsequent act of domestic violence, stalking, or sexual assault is not required for a

9
 As previously discussed, the trial court had personal jurisdiction over Chapline to renew the protective order, and,
as described in further detail below, we find the renewal was supported by substantial evidence.

 12
renewal order of protection.”). “The renewal also can be based on the fact that the circumstances

forming the basis for the initial order continue to exist and a failure to renew will place the

petitioner in an immediate and present danger of abuse.” C.B., 356 S.W.3d at 793 (internal marks

omitted). “Whether the threatened abuse has come to fruition or not is irrelevant.” Id. “It is not the

function of this Court to engage in such ‘hindsight’ review of the issuance and renewal of orders

of protection.” Id. The trial court is in the best position to “determine the existence of any

reasonable apprehension of abuse that a petitioner may harbor[.]” Id. at 792-93.

 Construing the evidence in the light most favorable to the judgment, we find K.C.

sufficiently demonstrated that expiration of the protective order would have placed her in an

immediate and present danger of abuse. K.C. testified that she was still “very afraid” of Chapline

and explained the basis of her fear. She stated that Chapline knew her whereabouts and

“continue[d] to stalk [her] on social media,” citing screen shots he had taken of her personal

Twitter account in violation of the protective order. She also described four instances where she

believed Chapline had called her from a blocked number and “just breath[ed] into the phone.”

When she confronted him during the final call by stating he was violating the protective order and

that she would call the police, he hung up. As a result, she feared he was “coming to get [her],” so

she checked his son’s Twitter account for any information suggesting he had traveled out of Texas.

She learned from this account that Chapline “had hit [his son] and beat him up,” indicating that

Chapline continued to engage in violent and abusive behavior, which supported the finding that

K.C., too, was in danger of abuse.

 Contrary to Chapline’s argument, K.C. presented evidence of more than just “her bare

statement of fear.” Although we agree that a mere statement of fear fails to meet the standard

required for renewal, see C.B., 356 S.W.3d at 794, Chapline ignores both the evidence described

 13
above, which includes his actions that formed the foundation for her fear, and the standard of

review, which requires us to defer to the trial court’s credibility determinations and construe the

evidence and inferences in the light most favorable to the judgment. The testimony of K.C. on

direct and cross-examination, when taken together, provided a sufficient evidentiary basis to

support the trial court’s conclusion that she was in immediate and present danger of abuse if the

original order of protection was not renewed. See C.B., 356 S.W.3d at 794-95 (renewal of

protective order was supported by substantial evidence where petitioner testified on cross-

examination regarding specific facts that demonstrated the foundation for her fear of the

respondent); see also Vinson, 192 S.W.3d at 495 (“Even if [the respondent’s] actions did not

constitute subsequent acts of abuse, the evidence, taken together, was sufficient to show that [the

petitioner] was still being harassed and threatened by [the respondent] and that he would be in

immediate and present danger of abuse if the original order of protection was not renewed.”). Thus,

we find the trial court did not err in renewing the order of protection.10

 Point II is denied.

 Conclusion

 The judgment of the trial court is affirmed.

 __________________________________________
 EDWARD R. ARDINI, JR., JUDGE

All concur.

10
 Chapline also asserts that the evidence did not support renewal of the protective order in that K.C. made admissions
by failing to timely respond to his requests for admissions, and that “these specific admissions, which all go to the
elements of a renewal of an order of protection, are fatal to [K.C.’s] case.” A review of the record reveals that Chapline
did not raise this issue to the trial court at any time prior to its entry of the renewal order. Chapline’s counsel did not
object to the admission of K.C.’s testimony or otherwise raise this issue at the hearing, even though at that point,
according to Chapline, the deadline for K.C. to respond to the requests for admissions had passed. Thus, we find this
issue is not preserved for our review, as Chapline waived any argument relating to the requests for admissions. See
Stewart v. Partamian, 465 S.W.3d 51, 55 (Mo. banc 2015) (“To properly preserve an issue for an appeal, a timely
objection must be made during trial.”); In re D.B., 616 S.W.3d 748, 753 n.4 (Mo. App. W.D. 2021) (“[O]bjections
must be made at the earliest possible opportunity, and a failure to object constitutes waiver of the claim on appeal.”).

 14